# HEDRICK *v.* HUGHES.

1. The act of Congress of March 6th, 1820, admitting Missouri into the Union, and the act of March 3d, 1823, respecting grants of land to that State, without further grant or patent, vested in the State the 16th section of each township for school purposes; but where this section had been sold or disposed of by the government, it required the selection of other lands in lieu thereof by the register and receiver of the proper land district, and such selection when made and entered in the register's books, vested the title of such substituted lands in the State.

2. In such case, where the register's book, or the leaf supposed to contain the entry, is lost or destroyed, the fact of such selection may be proved by other evidence,—as, that the lands claimed to have been so selected had been treated and sold as school lands by the proper State authorities

near to the period when the selection should have been made; also, that the original township plat kept in the register's office had a memorandum on the lot in question that it was "reserved for schools."

3. Where a county school commissioner in Missouri kept in a book a record of his transactions in selling the school lands in the county, which was deposited in the county clerk's office, and preserved as a public monument among the county archives, it is *de facto* a public record, and proper evidence of his official acts. It is also admissible as the entries of a deceased person, made in the course of his official duty, in a matter of public concern, to prove his official transactions.

4. If a township plat be lost or destroyed, it may be proved by a copy; and memoranda on such copy, not contained in the original, if accounted for and explained, will not exclude the copy as evidence of the contents of the original, even though such memoranda be a translation of corresponding memoranda in the original.

ERROR to the Circuit Court for the District of Missouri.

*Messrs. Montgomery Blair and F. A. Dick, for the plaintiff in error; Mr. T. T. Gantt, contra.*

Mr. Justice BRADLEY stated the case, and delivered the opinion of the court.

This was an action of ejectment brought by the plaintiff in error to recover a certain quarter section of land in Howard County, Missouri. The plaintiff claimed the land under a patent of the United States, granted to one Widdicombe, June 1st, 1868, upon a scrip certificate issued to the State of Kentucky, under the act of July 2d, 1862, donating lands to the several States for the support of agricultural colleges. The defendant, who had been in possession of the land for more than thirty years, and had erected expensive improvements on it, claimed title under a grant from the State of Missouri, made in 1832. The title of the State was derived in the following manner. By the 6th section of the act of Congress, passed March 6th, 1820,* entitled, "An act to authorize the people of the Missouri Territory to form a constitution and State government, &c.," it was, amongst other things, proposed for the acceptance of the convention, and,

---

* 3 Stat. at Large, 545.

if accepted, to be binding on the United States, that "section sixteen," in every township, and when such section had been sold, or otherwise disposed of, other lands equivalent thereto, and as contiguous as might be, should be granted to the State for the use of the inhabitants of the township for the use of schools; also, all salt springs, not exceeding twelve in number, and six sections of land contiguous to each, for the use of the State, with other concessions stated in the act. These proposals were accepted by the convention. For the purpose of carrying out this grant as to school lands, an act was passed on the 3d of March, 1823,* by which it was enacted that in all cases in which "section sixteen" had been sold or otherwise disposed of, it should be the duty of the register and receiver of the respective land offices in whose districts such land might be, to select the like quantity of other lands equivalent thereto, from any of the unappropriated lands of the United States in that State, as nearly contiguous to said "section sixteen" as might be; and a descriptive entry of such selected lands should be made on the books of the register, specifying as well the township in which, as that for the use of which, the selection should be made; and the lands thus selected and located were, by the act, granted to the State, for the use of the inhabitants of the respective townships for the use of schools, instead of the sixteenth section so sold or disposed of.

The defendant insisted that section sixteen, in the township in which the lot in question was situated, had been sold by the United States prior to March 6th, 1820; that the register and receiver of the land district had selected other lands for the use of the township for school purposes under the act of 1823, and had made a descriptive entry thereof in the register's books in pursuance of the act; and that the quarter section in question (which was a part of section seventeen) was one of the tracts so selected, and thereby became the property of the State, and had been sold as such

---

* 3 Stat. at Large, 787.

by the school commissioner of the county in 1832; and that a patent had been duly granted by the State in pursuance of such sale, under which the title of the defendant was regularly derived.

All the parts of this defence were duly proved except one. This was the selection and entry of the lot in question by the register and receiver, in lieu of "section sixteen," disposed of. The register's book contained no descriptive entry as directed by the act. The leaf that should have contained it (if it was made) being missing; and the original township plat (which would probably have indicated the fact) being also lost.

This hiatus in his case the defendant endeavored to supply by proof *aliunde*. He adduced the testimony of several witnesses to show that the lot in question had been rented out as school lands for several years prior to 1832, and that in that year it was sold, with other school lands, by Owen Rawlins, the county school commissioner, being the sale upon which the State patent was based. He then produced and offered in evidence from the county archives, kept in the clerk's office, a certain book or record, kept by Rawlins, containing a copy of his commission as school commissioner, and a history of his proceedings in selling the school lands; together with a list, in the handwriting of one Boon, of all the school lands of the county, including the lot in question; which entries were made in 1831–2, and both Rawlins and Boon were shown to have been dead many years. The defendant also produced a book purporting to contain a copy of the original township plats in the register's office (including the township in question), showing the various sections of land, and memoranda written on each section as to the disposition thereof, in which the quarter section in question had the words "reserved for schools" written upon it. As to the origin of this book James L. McNair testified that it was made by him in 1853; that he was then deputy clerk of Howard County; that he had before that time been clerk in the office of the register whilst his father held that office; that an act of the Missouri legislature directed the county

clerk to procure a copy of the township plats in the register's office; and that the witness was employed by Mr. Harding, the then clerk of the county court, and by Judge Todd, then register of the land office, to make the copy; that he made it carefully, and was satisfied that the book produced was a true copy—not, however, a literal copy of any one book then in the register's office, in all particulars. As to entries, the plat-book in the register's office would contain on any particular subdivision of land the letters "A.," "P.," with a number; on another book would be seen the name corresponding to this number; and, in compiling this copy, the witness would write down the name instead of the number—thus translating it, and condensing two books into one. The letters "A.," "P." signified that the tract had been *applied* for and *paid* for. In respect of reservations for schools, the words, "reserved for schools," were written on the original plats in the register's office on the tracts so reserved. The writing on the plat of the township in question was all in the witness's handwriting as he made it in 1853. Herndon, who was for more than twenty-five years clerk of Howard County, corroborated McNair's testimony.

Upon this proof the defendant offered in evidence the said record of Owen Rawlins, and the copy of the plat of the township in question in the book made by McNair; and the court, against the objections of the plaintiff, admitted them in evidence; to which ruling the plaintiff excepted.

This is the first error assigned; and we have no hesitation in saying that the evidence was properly admitted. The book of Rawlins was *de facto* a county record, preserved as a public monument in the county archives. For the purpose of showing his acts as school commissioner in selling the land in question as school lands, it was undoubted evidence. It was such, not only as a public record, but as the entry of a deceased person made in the course of his official duty, in a matter of public concern, which clearly made it evidence of his public transactions. The list made by Boon

Statement, in the opinion, of the second point of the case

was evidently a part of the same record made under Raw-lins's direction, and was admissible on the same grounds.

The plat made by McNair was competent secondary evi-dence of the contents of the original plat which was lost. The fact that it did not correspond in every particular with that original in respect of the memoranda written upon it, did not detract from its admissibility. Those memoranda, and the manner in which they were made, were sufficiently explained.

As to the bearing of this evidence upon the issues of the cause, it is sufficient at this point to say, that in view of the fact that the proper evidence with regard to the action of the register and receiver was entirely lost or destroyed, the fact that the land in question had been publicly treated and disposed of by the county authorities as school lands so near to the time when such lands were set apart for school pur-poses, had an important bearing on the question whether the register and receiver did, in fact, make the selection of the lot in question. We think that it was proper evidence to go to a jury on such a question. Without other corrobo-rative circumstances, it might have had but slight weight. But on the principle involved in the maxim "*omnia præsum-untur rite esse acta*," as applied to the acts of public officers, we think it was clearly competent.

The bearing of the township plat will be discussed here-after.

To rebut this defence the plaintiff offered evidence to show that neither the local land office nor the General Land Office at Washington contained any evidence whatever of the alleged selection of the lot in question as school lands, but that the only memorandum with regard to that lot was of the sale to Widdicombe, under which the plaintiff claimed title.

The plaintiff then called upon the court to declare, as law, that the United States did not part with its title to the land in question prior to the issuing of the patent to Widdi-combe; and that neither the act of Congress of March 6th,

1820, admitting Missouri into the Union, nor any subsequent act, operated as a grant *per se* to the State, or to any of the inhabitants thereof, of the lot in question; but that to divest the title of the United States, the lot should have been designated and set apart according to law, in lieu of a similar quantity of the sixteenth section sold or disposed of by the government prior to March 6th, 1820, and that no such designation or setting apart had been shown by the evidence. This was, in substance, asking the court to decide against the validity of the defence. The court refused so to declare, but on the contrary, at the request of the defendant, in substance, declared the law to be, that if, in fact, prior to 6th March, 1820, section sixteen had been disposed of and sold by the United States, and if the register and receiver of the proper land office, under the act of 1823, in lieu thereof, did reserve and select the lot in question, and did make a descriptive entry of said reservation and selection, which entry had been lost or destroyed by the loss of the leaf on which it was made, the claim of the plaintiff under the State of Missouri was valid.

To these rulings exceptions were taken.

It is certainly true that neither the act of 1820, nor that of 1823, of themselves, transferred the title of the lot in question from the government to the State of Missouri. The sixteenth section of land having been disposed of, it required a designation of some other lands, in the manner pointed out by the statute, to take its place. Until such designation was made it is evident no title could pass. But such designation and entry were all that the law required to be done. No patent was necessary for the substituted lots any more than for the sixteenth section itself, had that been undisposed of. The things to be done in order to vest title in the State were *certain acts* of the register and receiver. The essential thing was the selection of the land. The evidence of it, as prescribed by the statute, was the descriptive entry to be made in the register's book. If the essential thing were done the destruction of the evidence would not de-

stroy the title. The primary proof of the act done would, of course, be the record itself. That being lost or destroyed, the acts of the register and receiver could be substantiated by the next best evidence which the case admitted of. The question before us is whether the evidence adduced and received by the court was conducive to prove the fact, and was the next best evidence to be had on the subject.

In our judgment it was both. No record evidence of the fact in question was required except the entry in the register's book. The evidence adduced was, first, the plat of the township so carefully compiled by McNair. This showed that the lot in question was designated as " reserved for schools." This designation was copied from the original plat in the register's office. Here then was evidence of the most convincing character that the lot in question had been designated by the register and receiver as school lands. Here was a collateral and contemporaneous record containing evidence of the very fact respecting the existence or non-existence of which the parties and the court were in search. It was not, it is true, the primary proof required by the statute, but it was independent proof of the essential fact in issue, and was sufficient proof to raise the presumption that if those missing leaves could be produced the primary proof would be found thereon. It was not so satisfactory as a literal compared copy of those leaves, but more satisfactory than oral testimony depending on human memory as to their contents. The books are full of cases to the effect that if a judgment record, or other record, be lost, the judgment or other matter may be proved by collateral entries and memoranda. But, secondly, we have the corroborative evidence derived from the acts of the county school commissioner in selling the lands as school lands, as far back as 1832, and the renting of them as such even before that time, and the defendant's possession and claim of title of the land as reserved school lands for more than thirty years, all going to strengthen the other proof and presumptions in the case.

It would be strange, indeed, if men's possessions could be

disturbed by the burning of a court-house, or the loss, destruction, or theft of a public record, when evidence, such as was adduced in this case, could be supplied to show that the acts upon which their titles depended had been duly performed by the proper public officers. And courts would be derelict in their duty to the community if they did not sternly rebuke speculative attempts to rob people of their just inheritances under such circumstances. Mere lapse of time and continuance of possession without pretence of title, or under pretence of a void title, cannot, it is true, be set up against the government; but long possession is, nevertheless, a strong weapon of defence in the hands of one who can show reasonable proof that the title of the government has been parted with, and has devolved to him.

As to the sufficiency of the evidence adduced in this case, it is not the part of this court, on a writ of error, to pronounce. That was the province of the court below sitting as a jury. That court determined it to be sufficient, and found the issue for the defendant. We think that the evidence was admissible, that it was pertinent to the issue, and tended to prove that issue on the part of the defendant, and that the law of the case, as declared by the court, was correct.

JUDGMENT AFFIRMED.