## HOWE *v.* TAYLOR, ET AL.

### PAROL EVIDENCE ADMISSIBLE TO PROVE CONTENTS OF LOST INSTRUMENT.

Where the undertaking of a county clerk has been copied into a book not required by law to be kept, and both the original and such copy have been lost or stolen, and no better evidence can be produced, upon satisfactory proof of the correctness of such copy, parol evidence of its contents is admissible upon an issue as to the contents of the original undertaking.

### EVIDENCE—OFFICIAL UNDERTAKING.

The testimony of a defendant, in a suit brought for the purpose of charging him, with others, as surety on such undertaking, that he has no recollection of having either seen or signed the same, is very unsatisfactory and entitled to but little weight, when the circumstances strongly indicate that positive information on the subject is in his possession, or within his reach.

### DAMAGES—MEASURE OF.

The amount which a party injured by the mistake of a county clerk, in recording a mortgage on real property, subsequently conveyed by the mortgagor to a *bona fide* purchaser for value, is entitled to recover from the sureties in such undertaking, is the value of the mortgaged property at the time of such conveyance.

APPEAL from Columbia. The facts are stated in the opinion.

*J. Catlin and B. Killin,* for appellants.

There is nothing in the record from which it can be reasonably inferred that an official undertaking was ever executed by Williams; that the sureties signed or justified to it, or that it was delivered, approved or filed. The record of the county court, offered by the respondent to sustain his allegation that such an undertaking was executed, reads as follows: " C. H. Williams came into court and filed his *bond,* which was duly examined and approved by the court." The record does not show that there were any sureties on the *bond.* There is no analogy between bonds and undertakings. (*City of Sacramento* v. *Dunlap,* 14 Cal., 424; *Curtis* v. *Richards,* 9 Cal., 33.)

The loss of the undertaking must be proved by the best

attainable evidence.    Before a party can prove the contents of a paper, whether it is produced or lost, he must prove the existence of an original and its execution.    (17 Mo., 40; 3 N. Y., 424; 39 Mo., 519; 65 N. Y., 127.)

Secondary evidence of the contents of a written instrument, when allowed, does not obviate the necessity of proving the genuineness of the instrument, but renders it more imperative.    (56 N. Y., 618.)

An effort is made to show that the appellants' names were to the instrument.    But there is no evidence showing that they signed and executed it, or authorized its execution.    The fact in controversy as to the execution of the instrument is, whether or not appellants did sign, or did authorize their names to be signed to, the paper.    (13 Iowa, 228.)

*William Strong & Sons*, for respondent.

This is a peculiar case, and it is to the credit of the state that this is the first time the supreme court has been called upon to try a case of this kind.

The writing and its record would certainly be the best evidence, but they are gone and it is not within the power of the party to produce them.    The rule requires that the best evidence be produced, yet this rule is construed to mean by best evidence, the best that is within the power of the party to produce.    This must depend upon the circumstances of the particular case.    If original evidence, without the fault of the party, is wanting, then secondary is admitted; if direct cannot be had, then indirect.    Any and every circumstance out of which a presumption can arise or an inference be drawn in support of the ultimate facts to be proved, or any part of them, is admissible, from the necessity of the case.

It is impossible to lay down a definite rule which shall be applicable to all cases.    The nearest approximation to such a rule may, perhaps, be stated in the following terms:

All evidence which tends, in the slightest degree, to enlighten the mind of the court or trier upon the matter in

issue, which the nature of the case admits, or which, without fault of the party offering it, is the best that he can produce, is admissible; and such weight is to be given to the entire testimony as under all the circumstances it naturally has upon the mind of the trier.   And if, from all the facts and circumstances proved, the triers can arrive at a satisfactory conclusion, as to the preponderance of evidence, they must so decide. The proof need not be free from doubt.   (Code, secs. 657, 835, subd. 5, 7.)

The question whether the entry of a copy of this undertaking of the county clerk in the book called Miscellaneous Records, is a technical record, has some bearing upon the weight to be given to some of the testimony in this case.

The question is not whether it is a copy, made by statute competent primary evidence, to take the place of the original, without accounting for its non-production, but is, whether the original being lost, and there being no possibility of producing a record copy, or a sworn copy, the court will not receive this testimony as the best that, under the circumstances, can be produced, and give it such weight as it must naturally have.   The probability that a copy written in the Miscellaneous Records by an officer who was acting under the belief that he made it in the line of his duty, is correct, is as great as that a technical record, made by the same officer in the actual performance of a duty, is a correct copy, and if it is the best evidence that the party can produce, it is admissible, and if lost, its contents can be proved in the same manner as the contents of the original, to prevent a failure of justice. We cite 1 Greenleaf Ev., sec. 509; 1 Wharton's Law of Ev., secs. 13, 135; 15 Wall., 123; 20 Wall., 226, 240, 245.

By the Court, Watson, J.:

The respondent brought this suit to recover damages, occasioned by official dereliction, from the appellants as sureties on the official undertaking of C. H. Williams, formerly county clerk of Columbia county.   The undertaking itself had been

lost or stolen prior to the commencement of the suit, which this court has already held entitled respondent to seek his relief in equity. (*Howe* v. *Taylor*, 6 Or., 284.)

The only questions we have now to consider, relate to the competency and sufficiency of the evidence to sustain the decree which the respondent recovered in the court below. The facts that respondent lost his security by the failure of the clerk to record his mortgage properly, and that the debtor has been insolvent ever since, cannot be denied. The value of that security will be considered hereafter.

The first question to be disposed of is, whether Williams ever gave an official undertaking. As already stated, the undertaking, if there ever was one, as well as the record of the same, were either lost or stolen before the suit was instituted. Of this fact there can be no doubt, and upon it there need be no decision.

The evidence of George Merrill, who was clerk during the period in which it occurred, fully establishes this fact. If corroboration were needed, the appearance of the volume of Miscellaneous Records, with the leaves torn out, upon which the index to the volume locates the record of Williams' undertaking as county clerk, would amply supply it. We are fully satisfied with the foundation that has been laid for the introduction of secondary evidence.

Williams testifies to his appointment as county clerk of Columbia county, and to his giving an undertaking therefor. Seth Pope, who was county judge at the time, also testifies to the same effect. The undertaking was delivered by Williams to Pope for acceptance and approval. Both testify that it was accepted. The record of the county court shows that Williams was appointed, and that his undertaking was accepted and approved, December 4, 1871.

. Williams thereupon entered upon the discharge of his official duties, and continued in the office until he was succeeded by Merrill, July 1, 1872, and no one is shown to have ever questioned his authority to do so. Merrill found an under-

taking in the office after his term commenced, which purported to be the official undertaking of C. H. Williams as county clerk.    He also found a copy of it in one of the volumes of Miscellaneous Records of Columbia county, and they remained there until about September, 1874, when they were missed and could not be found after diligent search.

We hardly need to invoke the presumption of law, that official duty has been regularly performed, to satisfactorily establish the fact that Williams did give an official undertaking when he was appointed, which was accepted and approved by the county court.    The evidence upon this point seems to us conclusive, and there is none to the contrary.    But it was necessary for the respondent to prove not only that Williams gave an official undertaking, but that it was *the* undertaking described in the complaint.    (*Stickney* v. *Stickney*, 21 N. H., 61.)

The undertaking declared on is substantially in the form given in the statute.    This statute was in force then, and had been for seven years.    Does the evidence in the case show that such was the form of the undertaking which Williams gave?    We have examined the numerous authorities on this point, in connection with the evidence, with considerable care, and have come to the conclusion that the allegations in the complaint, upon this subject, are fairly sustained.    We have heretofore found that an official undertaking was given, accepted, approved and acted upon.    We have noticed the character of the legal presumption applicable to the circumstances developed by the evidence, and we need only suggest that this presumption is equally favorable to the respondent here.    It will be presumed, in the absence of any evidence to the contrary, that the undertaking was substantially in compliance with the requirements of law.    But the decision of this point does not depend altogether on mere legal presumptions. Williams swears that he gave an undertaking which he supposed was the correct and right bond for him to give.    He does not know if it complied with the general statutes.

Pope testifies that so far as he knows the undertaking was in the usual form and properly signed. Merrill testifies that to the best of his recollection, it was in proper shape and form. That he has no recollection of noticing anything wrong or peculiar about it. That to the best of his knowledge and recollection it was in the form given in the statute, and to the State of Oregon, in the amount of ten thousand dollars, and that the justification of the sureties accompanied it.

We have assumed as a legitimate and satisfactory inference that the undertaking which Merrill found in the clerk's office during his term, was the same that Williams gave, and we have no doubt of the correctness of this view. But we think the testimony of F. D. Winton, as to the contents of the copy, which was abstracted, as we have seen from the Miscellaneous Records, should also receive some consideration.

We do not find from the evidence that he ever saw the original undertaking, but his testimony seems to be based wholly, so far as it touches this matter, upon his recollection of what he saw in the copy, in the Miscellaneous Records, before its abstraction. Appellants claim that his testimony to this point cannot be received. But from all the facts and circumstances disclosed by the evidence, we are fully satisfied that this was a correct copy of the original, and both being lost, we think parol evidence of the contents of the copy was admissible. (*Winn* v. *Patterson*, 9 Peters, 663; *Hedrick* v. *Hughes*, 15 Wall., 123.)

But without the testimony of Winton, we should still hold that the contents of the undertaking declared on were satisfactorily established. (*Posten* v. *Rassette*, 5 Cal., 267.)

Such undertakings are comparatively simple and uniform in their provisions, and the same degree of particularity, in the proof of their contents when lost, does not appear to us to be requisite, as in the case of lost instruments of a private character.

There are some other matters proper to be considered in this connection. This record was obviously made by William's

deputy, S. G. Candle, and during his term. As it was not required by statute, it was done with the sanction, if not under the supervision, of the county court. That such was the custom in Columbia county is evident. It was designed for public inspection and use, to afford greater security for the original, and to subserve the convenience both of the public and of the officer having the legal custody of the original. The opportunities for imposition or mistake were for these reasons quite limited, and hardly worth considering, in the absence of any evidence tending to show any grounds for suspicion that this record was not fairly and correctly made.

But the more important and difficult question, whether the appellants, or any of them, were sureties on that undertaking, still remains to be determined. Williams, himself, when asked to state who were sureties on his official undertaking, answered that he did not know. In answer to specific questions as to each of the defendants, he says he is inclined to think B. F. Giltner was not a surety, as he was not friendly toward him at that time. That he does not think that James Dart was a surety, but gives no reason for his belief. That he does not think Wagner, Yeargain or Caples were sureties, because they were politically opposed to his appointment. That he is inclined to think Joel Hamilton was a surety, but is not sure. As to the other defendants he does not know or remember. Pope does not recollect who the sureties were, but thinks the undertaking was properly signed.

S. G. Candle, who was Williams' deputy when the mistake in recording the Gillahan mortgage occurred, and also, according to Williams' testimony, obtained all the sureties on the undertaking, and conducted the whole business, could not recollect who any of the sureties were.

The appellants, Miles, Caples, Yeargain, Benham, Giltner, Dart and Taylor, were examined by the respondent. Benham, only, positively denied having either seen or signed the undertaking. The rest had no recollection of having done so.

George Merrill testifies that the original undertaking, as

well as the pages in the Miscellaneous Record containing the copy, were abstracted from his office about August or September, 1874, and that he believes them to have been stolen. That the index showing that the undertaking had been recorded on the missing pages is in the handwriting of S. G. Caudle. He further says, that to the best of his recollection and belief the names of the appellants, Taylor, Miles, Dart, Caples and Giltner, and also the name of one T. C. Elrington, were on the undertaking. His testimony shows, also, that Taylor, Miles, Giltner, Dart and Caples came to his office to see who were on the bond. That some of them came several times, and that Samuel Miles looked at the undertaking more than once. The last time he was in the office was two or three weeks before the undertaking was stolen. All of Merrill's testimony is to the best of his recollection and belief only. But taking it in connection with all the surroundings, and we are as fully impressed by it with the truth and correctness of what he thus asserts, as we could have been had it been of the most positive character.

It is evident to us that he testified to nothing detrimental to the appellants, except that which he firmly believed to be true, and of which he had the best opportunities of knowledge. His recollection and belief as to who were sureties on the undertaking, are not wholly based on seeing the names on that instrument, but upon the additional fact that his examinations were made at the instance of these very parties whose names he did find there. He does not recollect having seen the names of Benham, Hamilton, Wagner or Yeargain on the undertaking, nor of any one of these coming to his office to inquire about the matter. We are satisfied that his testimony is both truthful and accurate, and that it is not counterbalanced by the negative and unsatisfactory evidence of Miles, Taylor, Dart, Giltner and Caples, to which we have already alluded.

Winton testified that to the best of his recollection the undertaking was accompanied by the justification of the sure-

ties, and that the names of the appellants, Taylor, Miles, Wagner, Benham, Yeargain and Giltner, and also the name of T. C. Elrington, were on the undertaking as sureties. His opportunities for knowing and recollecting the names on the undertaking were not equal to Merrill's, and we think his liability to mistake much greater. We have concluded that so far as it corroborates Merrill's it should be considered, but that it is not sufficient to fasten the liability of Benham, Wagner and Yeargain.

Hamilton has not appealed, and it is therefore unnecessary to discuss the effect of the evidence as to him. There is some testimony as to the admissions of the appellants Miles, Taylor and Dart. Judge Strong testifies that Miles told him that he was a surety on this undertaking. Miles denies any recollection of making any such admission, but says if he did make it, it was in the way of a joke. Such a denial, it seems to us, is not entitled to much weight, in opposition to the positive testimony of Judge Strong.

The testimony of Nelson and Mary Hoyt shows a substantial admission by Taylor that he was one of the sureties on the undertaking, and has every appearance of accuracy and candor. Taking Taylor's testimony on this subject altogether, it cannot be construed into a positive denial of the admission. Winton testifies to a similar admission by Dart. It can hardly be claimed that Dart has denied it. He gives what he terms the substance of the conversation, in which Winton says the admission was made. In his version of that conversation no admission appears. But it seems to us it must have been in the power of the appellants to have furnished more direct, positive and satisfactory evidence that they were not sureties on the undertaking, if that had been the fact, than they did furnish, and they cannot complain, after respondent had made out a *prima facie* case, if their failure to do so is held to afford ground for an inference unfavorable to their defense.

We are convinced, after a thorough examination of all the

evidence, that the appellants, T. H. Taylor, Samuel A. Miles, B. F. Giltner, James Dart and Hezekiah Caples were sureties on the official undertaking of C. H. Williams, and must be held liable for the loss occasioned by the mistake of their principal. But we are not satisfied that the evidence is sufficient to justify the same conclusion as to the appellants, John Benham, W. L. Wagner and D. J. Yeargain, and hence we deem the respondent's case not made out as to them.

In regard to the amount of damages respondent is entitled to recover, we are compelled to differ with the decision of the court below. Gillihan and wife conveyed the land covered by respondent's mortgage to Semple, August 23, 1872. The respondent testifies that he became aware of the mistake in 1873. Improvements were put upon the land in 1874, by Gillihan's grantees, which increased the value of the premises eight hundred or one thousand dollars.

We do not think the evidence warrants the conclusion that at any time after the mortgage was given, up to the date of the improvements in 1874, the value of the premises exceeded twelve hundred dollars; and this amount, with ten per cent. interest per annum from the date of the conveyance to Semple, we have concluded the respondent ought to recover from the appellants, whom we have found were sureties on Williams' undertaking, and Joel Hamilton, with his costs of suit against all of said parties in the court below, and against said appellants in this court; and that the appellants, John Benham, W. L. Wagner and D. J. Yeargain are entitled to their costs against the respondent, both in the court below and on this appeal.

The decree is modified accordingly.