13   515
110  882

13   515
114  752

No. 78.—F. W. JONES AND WIFE, plaintiffs in error, *vs.* CHARLES W. MORGAN, defendant in error.

[1.] The admission of a party, whilst in possession of property, against his title, is good evidence for the plaintiff in trover for that property.

[2.] The plaintiff in trover for negroes, relied upon a deed delivered on the 22d April, 1826. The defendant proposed to read to the Jury an exemplification which contained a deed to the same property from the same grant-

or, dated in 1820; an affidavit proving the handwriting of the only sub-scribing witness, and the Clerk's entry of its record, on the 24th April, 1826. Also the defendant proved by the Clerk of the Court, that the original of this copy was presented to him for record, at the time it was recorded, and that the copy, he believed, is a true copy of the original, and that the original was brought to him to be recorded by the grantee. Also by the defendant himself, that the original deed had been lost or stolen from him.

*Held*, that this last named deed could not be admitted in evidence, be-cause there was no proof of delivery, and that it could not be read as an ancient document, to defeat the plaintiff's title under his junior deed.

[3.] An instrument in which the grantor declares that she has given and *bequeathed* certain property to *her daughter and her heirs forever,* held to be a deed of gift, and not a testament.

[4.] A conveyance of property to trustees, "for the sole use and purpose of Charlotte Morgan, wife of Charles Morgan, and to her heirs and assigns, and to her and their own proper use and behoof:" *Held*, to pass the ab-solute property to Mrs. Morgan, and at her death, the trust being fully ex-ecuted, it will go to her husband through an administration on her estate, and not to her children as purchasers.

[5.] A party is proven to have admitted that he has held negroes in posses-sion for ten years after plaintiff's right accrued, and that they be-longed to plaintiff, and he was willing to give them up when they wanted them: *Held*, that this is not such a possession in the plaintiffs for the term of limitation as will give them a statutory lien against a deed to the pro-perty in favor of the claimant.

[6.] A party is not concluded by parol admissions against his title, but may explain or avoid them by evidence, unless his adversary has acted upon them and been induced by them to alter his condition.

Trover, in Sumter Superior Court. Tried before Judge BROWN, February Term, 1853.

This was an action of trover, brought by Francis M. Jones and his wife, Julia A. Jones, (formerly Julia A. Morgan, daughter of Charlotte Morgan, deceased, who was the wife of the defendant in error,) for the recovery of one-fifth part of two negro slaves, Caty and Binah, and their offspring, nine in number. On the trial, it appeared in evidence that Mrs. Charlotte Morgan died in 1840, leaving five children; and that Julia A. Jones, one of the plaintiffs, was one of the chil-

dren, and that she intermarried with Jones in 1848, being a minor at the time of the marriage.

The plaintiff read in evidence the following deed:

GEORGIA, LAURENS COUNTY:

Know all men by these presents, that I, Ann Gibbons, of this County and State aforesaid, for, and in consideration of the good will and affection that I have towards my daughter, Charlotte, now wife of Charles W. Morgan, of this County, do hereby give and bequeath to her, the said Charlotte Morgan, and to her heirs forever, a certain negro girl, named Binah, about sixteen years of age, &c. that is to say, to be and remain hers during the period of her natural life, not subject to the control of her present husband, nor any other person whatsoever, or subject in anywise to the said Charlotte Morgan, nor her present husband, so far as to be entitled to sell or dispose of the same, or in anywise subject to any contracts, dues, or demands against the said Charlotte, or her husband Chas. W. Morgan, but to be and remain hers during her natural life, and at her death to belong to her children; that is to say, the said Binah with all her increase. In witness whereof, I have hereunto set my hand and seal, this 22d day of April, 1826. ·ANN GIBBONS. [L.S.]

Witnesses, MARY SALTENSTALL,
          JOSEPH JOINER.

Which deed was duly probated and recorded in the Clerk's office of the Superior Court of Laurens County, on the 24th day of April, 1826.

Plaintiff then proved by William Morgan, a son of the defendant in error, the admissions of his mother, Mrs. Charlotte Morgan, to the effect, that Caty and Binah, and their issue, were the property of herself for life, and then it went to her children.

Plaintiff then proposed to prove by the same witness that the defendant had always disclaimed title to the negroes sued for, and admitted that they were secured to his wife and chil-

dren, both before and after the death of Charlotte Morgan, and while the defendant was in possession of the negroes.

The Court rejected the evidence, and counsel for plaintiff excepted.

Plaintiff then read in evidence a bill of sale, made by Ann Gibbons, on the 31st July, 1826, conveying to one Louis Linder and Henry Gibbons, in trust " for the sole use and purpose of Charlotte Morgan, and her heirs and assigns," certain property, among which, was Caty and her child, Prince.   Upon the reading of which, the Court ruled in the admissions of the defendant, which had been previously rejected.

Plaintiff then proved by James Glass and Elias Clark, that defendant, after the death of his wife, and while in possession of the property, admitted that the negroes sued for belonged to his five children, of whom Mrs. Jones was one, and that he was willing to turn it over to them at any time—plaintiff having closed.

The defendant offered in evidence the following exemplification from the records of the Superior Court of Laurens County :

" GEORGIA, Laurens County :
Know all men by these presents, that I, Ann Gibbons, of said County, do hereby give and bequeath to my daughter, Charlotte Gibbons, and her heirs forever, a certain negro girl named Binah, about eight years old, &c.   In testimony whereof, I have hereunto set my hand, this the 6th day of June, 1820.                          ANN GIBBONS.
Witness, Joseph Saltenstall.

" GEORGIA, Laurens County:
Personally came before me, R. B. Hind and James Glass, who, being duly sworn, deposeth and saith, that he was well acquainted with the handwriting of Joseph Saltenstall, and believes the above to be his handwriting, from having seen his subscription.                          JAMES GLASS."
Sworn to and subscribed before me, July 20th, 1827.
                          W. M. MOORE, J. P.

Jones and another *vs.* Morgan.

To which plaintiff objected. The Court overruled the objection, and counsel for plaintiff excepted.

The defendant then proposed to prove by James Glass, that he knew the negro girl, Binah, in 1819-'20,-'21-'22, in the possession of Mrs. Gibbons; that defendant and Charlotte Morgan were married in 1820, and that in 1821, he saw the negro girl Binah, in possession of Morgan, and that he never knew her to be in the possession of any other person from then until the present time. To which evidence, the counsel for plaintiff objected. The Court overruled the objection, and plaintiff excepted.

The defendant then read in evidence letters of administration on his wife's estate. Plaintiff objected. The Court overruled the objection, and plaintiff excepted.

Counsel for the plaintiff requested the Court to charge the Jury, "that the admissions of defendant for twelve years, being in possession of the property, with or without title, that said property belonged to his children, entitled plaintiff to a recovery; and that if they believed from the evidence that defendant had been holding said property for his children for ten years, it created in plaintiff a statutory title, which would entitle them to recover; and that defendant was estopped from setting up title in himself against plaintiff, Jones, who married one of the children—marriage being a valuable consideration."

Which charges the Court refused to give, and counsel for plaintiff excepted, and upon these several exceptions have assigned error.

W. A. HAWKINS, for plaintiffs in error.

DUDLEY, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The proof of the statements made by Mrs. Morgan, relative to the property, was unquestionably admissible. They

were made in the presence of the defendant, and assented to, not tacitly, but expressly, by him. They were, therefore, his admissions against his own title, during the time that he was in possession.

So, also, his admissions were provable. Whether his admissions of holding the property for the period of the Statute limitation term, as the property of the plaintiff and the other children of Charlotte Morgan, gives to the plaintiffs a title upon which they can recover, is a question of law to which I will again advert. Now, I mean to say, that Charles W. Morgan's admissions against his title, made while in possession of the negroes, is legal evidence for the plaintiff suing for those negroes. The objection founded on the principle that an estate in remainder cannot be proven by parol, upon the exhibition of the documentary evidence, was waived, and I have no occasion to notice that any farther.

The slaves in controversy, are a woman, Binah and her issue, and Caty and her issue. The plaintiff's claim to Binah, depends upon a title differently derived from the title which they set up to Caty. The case, therefore, is divisible into such questions as arise on the claim of the plaintiffs to Binah and her children, and such as arise on their claim to Caty and her children. And first as to Binah. The plaintiffs read to the Jury, a deed from Mrs. Ann Gibbons to her daughter Charlotte, the wife of the defendant, Charles W. Morgan, and who had intermarried with him before the date of the deed, giving Binah and her issue to Charlotte, during her life, and to her (Charlotte's) children at her death. It bears date on the 22d April, 1826, was proven and recorded two days afterwards, to wit, on the 24th April, 1826. They then proved that Charlotte Morgan died in January, 1840, leaving five children, of which the plaintiff, Mrs. Jones, is one—the possession of Binah and her increase in the defendant at the institution of the suit, their value, and the value of their hire. Also, that the defendant was in possession of the negroes since the year 1839.

[2.] Such was the plaintiff's case as to Binah and her in-

Jones and another *vs.* Morgan.

crease. The defendant below, opening his case, tendered in evidence an exemplification from the record books of the Superior Court of Laurens County, which purported to be the copy of a deed of gift from Ann Gibbons to her daughter, Charlotte Gibbons, of a negro girl named Binah, about eight years old, of very dark complexion, dated on the 6th day of June, 1820, signed Ann Gibbons, and witnessed by Joseph Saltenstall. To the copy deed was annexed the copy affidavit of James Glass, to the effect that he was well acquainted with the handwriting of Joseph Saltenstall, and believes the above to be his handwriting, from having seen his subscription, which was sworn to and subscribed before a Justice of the Peace, on the 20th July, 1827. In this exemplification was the Clerk's entry of its record on 20th July, 1827. Simultaneously with the presentation of this copy deed, the defendant proved by James Glass, that he saw the original, or what he then took to be the original, but never compared them, in July, 1827, when the defendant brought it to him to prove, and it was reported that the witness was dead. It was also proven by the defendant himself, that the original was stolen or lost from his trunk. The Court admitted the deed in evidence, and the defendant then proceeded to prove by James Glass that he saw a negro girl, Binah, in 1819,-'20,-'21,-'22, in the possession of Ann Gibbons; that in 1820, the defendant was married to Charlotte Gibbons, and that they lived with Mrs. Gibbons the year that they were married. That in 1821, he (the witness) was occasionally at Charles Morgan's, who then lived to himself, and upon some of his visits he saw the girl, Binah, but did not know whether she staid there or not, or whether she was sent there or not, and that he never knew her to be in possession of anybody else from that time until now. This was the defendant's case, as regards Binah. The evidence I take from the bill of exceptions, the Reporter's brief not containing the whole of it.

To the admissibility of the copy deed of gift, and also to the last detailed evidence of James Glass, the plaintiffs in the action below excepted. To the former it was objected;

1st. That it was a testamentary paper and could not be read in evidence until proven and recorded before the Court of Ordinary.

2d. That it was not executed, there being no evidence that it was signed, sealed and delivered.

3d. That it was not an ancient document, because it was a copy paper.

4th. That it was a copy paper, and the copy was not shown to have been in existence thirty years.

The presiding Judge sustained the second objection, to wit: that the deed was not shown to have been signed, sealed and delivered, overruling the other objections. That is, he held that it was not a testamentary paper, but a deed, and that it was admissible in evidence as an ancient document.

[3.] We agree with his Honor, Judge *Brown*, that this is not a testamentary paper. No reason whatever is advanced to support this idea, but this, that the donor uses the word *bequeath* in the body of the instrument. She says, " I, Ann Gibbons, do hereby give and *bequeath* to my daughter Charlotte Gibbons, and her heirs forever, a certain negro girl named Binah, about eight years old, of very dark complexion; in testimony whereof, I have hereto set my hand, this 6th day of June, 1820." It is true, that *bequeath* is a word common in wills. But its meaning is controlled here by other words, and by the legal effect of the instrument. There are no words used whatever, descriptive of the intention of the donor, that the instrument is to take effect at her death. On the contrary, it is clear that she intended to pass a present interest or property in Binah, and the legal effect of the paper is, to pass a present interest or property in her. 2 *Kelly*, 44, 49. 3 *Kelly*, 573, '4. 4 *Ga. R.* 75.

And, if viewed in the light of a modern instrument, requiring proof of its execution, we agree with the Court, that it is not sufficiently proven. There is no proof of its delivery. The probate upon which it is passed to record, is all the proof, whatever, that we have of its execution, and that is, proof of the handwriting of the subscribing witness, Saltenstall. If

Jones and another *vs.* Morgan.

the probate were full, and the deed recorded, on that proof, we should hold that sufficient evidence of execution, but it is not. The witness being dead, proof of his handwriting proves execution, so far as he himself has witnessed it. He witnesses here, only the signing of the instrument. There is, really, no attesting clause. He only signs his name as a witness, and it is not stated that the instrument was delivered in his presence.

But we differ with his Honor in his decision, that the copy was admissible as an ancient document. We have no evidence of the existence of this instrument earlier than the date of the probate and record, which was in July, 1827. The copy before us is a copy of a deed *then* recorded, taken from the records of Laurens Superior Court. The original not being before the Court, and there being no evidence of possession under it, until after the date of the record; indeed, no evidence of possession in the grantee, until after the date of the junior deed under which the plaintiffs claim; the genuineness of the original is not sufficiently shown. It is true, that the old deed is proven to have been in the custody of Morgan in 1827, seven years after its date, but one year after the date of the plaintiffs' deed. I do doubt whether the rule as to ancient documents, is applicable at all, unless the original paper is before the Court; but if it is, we are clear that the old deed is not, under the circumstances of this case, to be considered as a paper having any *legal entity*, until it is produced in 1827 for record. Without proof of delivery, or proof of possession of the property under it, before the date of the junior deed, we cannot see how it can be allowed to go in evidence under any rule, to defeat the junior deed. Without such proof, we are bound to consider it as a mere purpose unfulfilled, to convey, subject to revocation, and which was, in fact, revoked by a later conveyance. If, as we are constrained to rule, the old deed is to be considered as a genuine deed, only from the time when it first appears in 1827, then it was not a deed thirty years old.

The evidence of Glass, proving the marriage of Morgan

with Charlotte Gibbons, in 1820, and that he saw the negro, Binah, at his house in 1821, &c. was admissible, as tending to show a parol gift of Binah to Mrs. Morgan, perfected by delivery of possession. The amount of it, as tending to prove such a gift, is slight, *exceedingly* slight. Yet it was correctly sent to the Jury, and the instructions of the Court as to the law regulating a parol gift were right.

[4.] So far as Caty and her issue are concerned, the plaintiff below proved that the defendant, Morgan, had held the possession of them for upwards of ten years after his wife's death in 1840, and that upon divers occasions before and after her death, he admitted that they belonged to his wife and her children, and that he held them for them, and was ready to give them up when they wanted them. Whilst the defendant below relied upon a deed from Mrs. Gibbons, dated in July, 1826, which is in the following words, to wit :

"GEORGIA, LAURENS COUNTY :

Know all men by these presents, that I, Ann Gibbons, (widow,) of the County and State aforesaid, for and in consideration of the sum of twenty-five dollars, to me in hand paid by Louis Snider, Sr. and Henry Gibbons, of the County and State aforesaid, before the execution of these presents, the receipt whereof is hereby acknowledged, have bargained, sold and delivered, and do by these presents bargain, sell and deliver unto the said Louis Snider and Henry Gibbons, the following property, to wit : one negro woman Caty, and her child, Prince, one negro, Isabella, and one negro girl, Louisa, one half of my silver ware, (to be equally divided between Mary Saltenstall and the above purchasers) one-half of my stock of cattle, and one.half my stock of hogs, one mare, (ball face) my lot of books of all descriptions and one pair of hand irons, to have the said bargained property on the following conditions ; nevertheless, that is to say, for the sole use and purpose of Charlotte Morgan, the wife of Charles Morgan, and to her heirs and assigns, and to her and their own proper use and behoof.

And I, the said Ann Gibbons, the said bargained property shall and do warrant and defend forever, by these presents.

In witness whereof, I have hereto set my hand and affixed my seal, this 31st of July, one thousand eight hundred and twenty-six.            ANN GIBBONS, [L.S.]

Signed, sealed and delivered in presence of

JONATHAN PARKER, Jr.

JONATHAN PARKER, Sr.

Which deed was proven on the 7th of May, 1827, and recorded on the 23d June, 1827. The defendant's counsel claim that this deed conveyed the property in the negroes, Caty and her offspring, to Charlotte Morgan, which vested in him at her death. To the contrary of this, the plaintiffs' counsel insists that the deed conveyed a separate estate for life in Mrs. Morgan, with remainder in fee, to her children, and that they take under it as purchasers. The presiding Judge rightfully, as we think, adopted the former construction. The intention of Mrs. Gibbons was, to protect this property from the debts and alienation of Morgan—but she conveyed it, notwithstanding, to his wife. The intervention of trustees does not change the character of the estate. It is an out and out conveyance "to the sole use and purpose of Charlotte Morgan, and to her heirs and assigns, and to her and their own proper use and behoof." The legal title is deposited in trustees, but not for the purpose of protecting a limitation over to her heirs. If that was her intention, the rules of law applicable to this deed, will not prevent its enforcement. The purpose of the trust was effected, and its legal existence ceased at her death. If it be conceded that she had a separate estate during the coverture, and really it is unimportant to determine that, as there is no question made between the trustees and the creditors, or alienees of her husband; the property became absolute in her estate at her death, and her husband was entitled to it, having administered on her estate, by our Statute. *Liptrot vs. Holmes*, 1 *Kelly*, 381.

[5.] Again, the counsel for the plaintiffs say, that independ-

ent of, indeed, in spite of this deed, and as overriding the title of the defendant under it, they are entitled to recover upon a title to Caty and her offspring, upon their possession after the death of Charlotte Morgan, for a term of years greater than the statutory term of limitation. In other words, they claim the benefit of the rule, that a plaintiff in trover may recover upon adverse possession for the statutory term. Whatever may be the limitations upon that rule, or under what circumstances applicable, it is not necessary to inquire, for it suffices to say, that it has no application in this case. For this reason, *they have not proved the possession.* They say they have, because Morgan, the defendant, admitted that he had no title to the negroes, and that they belonged to his wife and her children, and that he was ready to give them up to them when the children wanted them. Upon this evidence they found the conclusions that *his* possession was *their* possession, and as *he* had possession for a term longer than the limitation term, *they* had possession longer than the term of the Statute; and thus they have a statutory title paramount to all others. Now, what is the truth of the case, as we derive it from Morgan's admissions? It is not that he derived the possession from them, for he acquired it rightfully under the deed; not that he held it as their agent, trustee or factor, created either expressly or by implication, but his admissions go the length of proving his *own possession*, and that *his* possession was subordinate to their property in the negroes, and would be yielded to them when they should come forward and assert their *right to the possession.* He admits their property and their *right to possession.* That is all. This view of the matter is conclusive of the case, as it removes the foundation upon which the plaintiffs stand.

[6.] But again, there is no foundation for the alleged title by possession, because the admissions of the defendant, admitting them to go the extent claimed by the plaintiffs, are not true, having been avoided by the production of the deed, which showed title in the defendant. The only answer to this proposition is, that the defendant is estopped by his admissions, and

could not set up title against them. To which it is a legal reply that he is *not estopped.* Verbal admissions, as a general rule, are not conclusive against the party making them—they may be explained or avoided in evidence. They are conclusive only when in *pais,* as these were, when others have acted upon them, and by them have been induced to alter their condition. As to such other persons, in such cases, the declarant is concluded. 1 *Greenleaf's Ev.* §204. *Phil. & Am. on Evidence,* 378. 1 *Philips' Ev.* 7th edit. 226-'7. 2 *Ibid, note* 192, *p.* 107.

If the plaintiff, Jones, who married the daughter of Morgan the defendant, was proven to have married her on account of these statements of the defendant, that the negroes belonged to his children, I should hold the defendant concluded. He would then have altered his condition in consequence of the admissions. Even if it were proven that the admissions were made in Jones' presence before marriage, I should be inclined to hold the defendant estopped, for it would be a reasonable presumption that he acted in marrying the daughter, upon them. Moreover, after making them in the presence of his future son-in-law, it would be a fraud upon his marital rights to set up a title in himself adverse to his admissions. But there is no evidence of these things. It does not appear in the record, that the plaintiff, Jones, had any knowledge, whatever, of the defendant's admissions before his marriage. And upon the plaintiffs' claim of title by possession, the Court charged the Jury in conformity with these views.

Let the judgment be reversed.