EDWARD F. SHARP v. WALTER RICHARDSON, Appellant.—No. 38956.—
182 S. W. (2d) 151.

Division One, July 3, 1944.

Rehearing Denied, September 5, 1944.

*Finch & Finch* and *Ward & Reeves* for appellant.

*Henry C. Riley* and *Edward F. Sharp, pro se,* for respondent.

 CLARK, P. J.—Suit to determine and quiet title, to cancel certain deeds and in ejectment. From a decree for plaintiff, defendant has appealed.

The real estate involved comprises something more than twenty-one acres in the northwest quarter of the southwest quarter of section 25, township 22, range 13, in New Madrid County. Both parties claim through a common source, Seth S. Barnes, who died in 1920 owning the land. Respondent claims title through mesne conveyances from the executor of the Barnes estate and two tax deeds, all the deeds describing the land as lots and blocks in Barnes Addition to the Town of Marston.

Appellant's claim of title rests upon conveyances as follows: (1) deed by county collector to F. L. Steele, trustee for New Madrid County, November 17, 1941, for taxes for 1934, 1940, inclusive, consideration $360.99; (2) deed from F. L. Steele, trustee, to Meredith and Kimes, November 24, 1941; (3) quit claim deed from Meredith to Kimes, November 25, 1941; (4) warranty deed from Kimes to appellant, November 26, 1941, consideration $1200.00. All these deeds described the land as: ''14 acres, more or less, in the northwest quarter of the southwest quarter (except town lots, except certain town lots)

in section 25, township 22, range 13. Situated in New Madrid County, Missouri.''

In 1899 a plat of Marston was filed in the recorder's office comprising land in section 26, but none in section 25. This plat shows certain named streets and unnamed alleys and blocks 1 to 9, inclusive.

On May 2, 1905, the Town of Marston was incorporated by order of the county court, including more land in section 26 than had theretofore been platted, also the northwest quarter of the southwest quarter of section 25, which includes the land now in controversy.

In February, 1908, Seth S. Barnes filed in the recorder's office a plat describing the nine blocks, streets and alleys, shown on the original plat and other land, including some land in section 25, as blocks 40 to 43, inclusive, but no part of the land involved in the present suit. This plat shows blocks 1 to 47, inclusive.

On December 12, 1920, according to the records of the county court, S. S. Barnes filed in that court a plat of Marston describing the land covered by the plats above mentioned and additional land, including the land now in controversy. This plat was not found in the county clerk's office. The record shows that the plat was duly acknowledged by Seth S. Barnes and approved by the Board of Trustees. The respondent, who is a son-in-law of S. S. Barnes, deceased, testified that he saw this plat; that it was made by a surveyor and duly acknowledged by Mr. Barnes; that Barnes took it to the county seat and returned without it, telling respondent that he left it in the county recorder's office; that it was never filed because of a dispute with the recorder as to who should pay the recording fees. Respondent showed by his own and other testimony that copies of this plat had been in general use in the town for many years, and many conveyances made by lot and block description as indicated by the plat. One of these purported copies was introduced in evidence as respondent's exhibit ''A''. It contains no acknowledgment and no description of land. It does show the same streets and same numbered blocks as shown by the plats on file together with additional streets and blocks including blocks of the same number now claimed by respondent. During the progress of the trial a plat was found in the back of the plat book in the recorder's office. It was not recorded in or attached to the book. The testimony was that this loose plat had been in the back of the plat book for many years, but, so far as known, no one had unfolded and examined it. The paper is old and faded and a part of it has been torn off and is missing. The part which remains does not designate any section, township, or range, or even a county or town. However, it does show numbered blocks, named streets and the location of a railroad as are shown on respondent's exhibit ''A'', except that it does not include as many blocks. On the back of this plat is the following: ''Filed, 12, '20 —, J. L. Rans———, Cou—.'' It was ad-

mitted that J. L. Ransburg was county clerk on December 12, 1920, when Mr. Barnes filed in the county clerk's office a plat of Marston.

One of the streets of the original town, Pecan Street, has been opened through the land now in dispute and the town has done some work on it. Otherwise, the land has been operated as farm land, most, if not all the time, under the control of respondent and his predecessors in title. At least since 1934 the land has been assessed for taxes both by lot and block description and by the description contained in the tax deeds to Steele. In 1939 the county collector, under the Jones-Munger Law, advertised the property for sale for taxes by the lot and block description, and in the same notice offered the tract for sale under the description by part of section 25 as later contained in the tax deed to Steele. Respondent introduced tax receipts showing that on November 1, 1939, he paid the delinquent taxes on a ██ portion of the property advertised by lots and blocks. On November 7, 1939, respondent bid in the remainder of the property advertised by lots and blocks and received a certificate of purchase. When this matured on December 26, 1941, respondent received a deed from the collector and since then has paid taxes on all the property as lots and blocks. At the third successive offering under the description as part of section 25, on November 17, 1941, Steele bid in the property for the county and received a deed from the collector. As heretofore stated, appellant claims through this Steele deed. Appellant has never paid any taxes on the property.

At the time of the execution of the deed from Kimes to appellant in November, 1941, appellant was occupying the land as the tenant of respondent, and had been since the previous January. He has never surrendered possession.

██ It is elementary that an accurate description of land is essential to a valid assessment of taxes. The assessment upon which appellant's tax title rests does not meet that requirement. The description is "14 acres, N. W. quarter of S. W. quarter, except certain town lots . . . " Appellant concedes that four blocks had been cut off from the forty acre tract and respondent contends that the entire tract had been divided into blocks with intervening streets and alleys. One street has been opened through the forty and used as a street for many years. From the description it cannot be ascertained what "certain" lots are meant to be excepted. But appellant says that respondent must recover upon the strength of his own title and not upon the weakness of appellant's title, and that is true.

██ First, appellant says that the petition fails to state a cause of action because it does not offer to refund to defendant the taxes paid by him or his predecessors in title, citing Section 11179, Revised Statutes Missouri 1939, [Mo. R. S. A., vol. 22, p. 384] and two cases construing that statute. The contention cannot be sustained under the circumstances of this case. Neither the appellant nor his pre-

decessors have paid any taxes. No doubt the county applied the money received from the sale by its agent, Steele, to the payment of taxes appearing to be due under the assessment as part of a section, but it had already collected the taxes from respondent under an assessment as lots and blocks. The tax sale to appellant's predecessor in title was void for two reasons mentioned in Section 11156, Revised Statutes Missouri 1939, [Mo. R. S. A., vol. 22, p. 359] to wit: because the taxes had already been paid before the sale and the assessment upon which the sale was based failed to describe the land with reasonable certainty. The latter section further provides that if the sale is void for either of the reasons mentioned the purchase money shall be refunded by the county. We think the meaning of the two sections, when read together, is that an owner who seeks to set aside a tax sale must offer to refund any taxes which he has failed to pay and which have been paid by the purchaser at the tax sale or his grantees, but if the owner has already paid the taxes before the sale the purchaser must look to the county for the refund of any taxes paid by him after they have previously been paid by the owner.

Appellant cites Section 12809, Revised Statutes Missouri 1939, [Mo. R. S. A., vol. 23, p. 998] which makes it unlawful and provides a penalty for any person to convey real estate by lot and block before a plat has been duly acknowledged, approved by a city council or village trustees, and filed in the recorder's office. From this appellant argues that the attempt to assess for taxation or to sell the land in controversy by lots and blocks was void, citing Downing v. Ringer, 7 Mo. 585, and other cases.

The statute which is now Section 12809 was considered in Downing v. Ringer. That was a suit to recover the purchase money for a town lot conveyed before any plat was filed in the recorder's office and it was held the action could not be maintained. This case was distinguished in Mason v. Pitt, 21 Mo. 391, wherein it was held that the failure to record a plat will not prevent the title passing by a fully executed conveyance as the statute does not declare the transaction void and there is no penalty on the vendee. The principle announced in Mason v. Pitt has been sustained in our later cases. [See Marvin v. Elliott, 99 Mo. 616, 12 S. W. 899, and United Shoe Machinery Co. v. Ramlose, 231 Mo. 508, 132 S. W. 1133, and cases cited.] Other citations by appellant on this point are cases in which it was sought to enforce an *executory* contract declared unlawful by a statute, or cases where a statute expressly declared the transaction void. Under ▇▇▇ our decisions respondent acquired good title to all that part of the land in controversy which was conveyed to him by owners by lot and block description notwithstanding no plat was filed in the recorder's office.

Did respondent acquire title to that part of the land covered by his tax deeds? Appellant says those tax deeds are void and cites

State ex rel. v. Hamilton (Mo.), 293 S. W. 378. That was a suit for delinquent taxes by the city of Salisbury, the tax bill describing the property as, ''Beginning at a point 64 feet north of the southwest corner of lot 2, in the northern division of the city of Salsby, as shown on the map of said city by Edwards Bros.' atlas . . . '' No plat had ever been filed in the recorder's office showing a ''northern division'' of Salisbury. We held the description insufficient to support a judgment and sale for taxes. That case was correctly decided, but we are now confronted with a different state of facts. In the instant case it is true that the plat was not filed in the recorder's office. It was taken there by the owner of the land described in it with the intention that it be filed, but we are bound by the stipulation of the parties and by the testimony that the plat was not filed. After the plat was lodged in the recorder's office, the land was treated as lot and block property by the owners and by the county and the city. Undoubtedly, there was a common law dedication of the streets and alleys shown on the plat and an acceptance by the town. The facts are sufficient to validate the executed conveyances by lot and block description willingly made by owners. Conceding that all the facts mentioned, without more, are insufficient to validate respondent's tax deeds, appellant is not in a position to raise that objection. At the time appellant took possession in January, 1941, as tenant of respondent, the latter held legal title to the land as follows: part of it by deeds from the owners, part by tax deed before the enactment of the Jones-Munger Law, and the remainder by certificate of purchase under the Jones-Munger Law. All these conveyances were by lot and block description. Appellant by taking possession as respondent's tenant recognized respondent's title. The unrecorded plat resting in the recorder's office would not impart constructive notice to appellant and he says he did not know that the property had customarily been conveyed and assessed by lot and block description. However, he did know that respondent claimed to own the land and that his own right to possession as tenant rested upon the validity of respondent's title. Without surrendering possession appellant could not successfully acquire and set up a title based on a theory that his landlord had no title. [Renshaw v. Reynolds, 317 Mo. 484, 297 S. W. 374.]

Under the testimony the decree was for the right party and is hereby affirmed. All concur.