A. E. KOCH, Appellant, v. A. GORDON et al.

Division One, December 23, 1910.

1. **EJECTMENT: Notice of Color of Title.** A deed to defendants, on record when their grandfather built for them on their lot a house which lapped over thirteen inches on his own lot, was notice to his subsequent purchasers of adverse possession under color of title, if the deed to defendants covered the strip.

2. ————: **Description: Monuments.** When monuments are called for in the description of a lot in a deed, they are ordinarily given precedence over distances. But a monument is a fixed, visible object. "The southwest corner of the portion of said lot formerly owned by Mary M. Burke, and where she now resides," and such like descriptive matters, are not real monuments, and cannot overcome the description by distances in the deed.

3. ————: **Adverse Possession: Limitations.** Unconditional and unequivocal adverse possession of a thirteen-inch strip between two lots, for twenty years, under color of title and claim of ownership, bars ejectment.

4. ————: ————: **Admission: Efforts at Compromise.** An agreement by one of two cotenants that he would, for certain favors, sign a release deed to plaintiff, if his sister would, is not an admission that their possession was not adverse.

5. ————: **Tax Receipts.** The description in tax receipts of "The undivided east frac. Lot 5, Block 57" is too indefinite to indicate on what part of the 58-foot lot, subdivided into one lot of 30 feet and another of 28 feet, the taxes were paid.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*C. D. Jamison* for appellant.

Contracts may be read in the light of surrounding circumstances. Agan v. Shannon, 103 Mo. 661; West v. Bretelle, 115 Mo. 653. In the construction of deeds the controlling canon is to ascertain the meaning of the grantor, from the words he uses, in the light of the

circumstances which surround him and attend his use of them. Long v. Timms, 107 Mo. 512; Gibson v. Bogy, 28 Mo. 478; Jamison v. Fopiano, 46 Mo. 197. The surrounding circumstances were: First, the fact that Malcolm had already conveyed part of the same lot to Mary M. Burke; second, confusion in the minds of the parties as to the number of feet in the lot; third, the fact that they failed to measure the frontage, and their evident indifference to distances; fourth, the fact that they adopted monuments on three sides of the part described; fifth, the evident anxiety of Malcolm not to trespass on the part of the lot formerly deeded to Mary M. Burke; sixth, the fact shown by the recitals of the deed that the grantees took no personal interest in the deal; seventh, the existence of the foundation of an old wall that misled defendants when they came to take possession; eighth, the fact that defendants (or Luster for them) did not make the deal for more than 26 feet. The chief object in the interpretation of contracts which are in any way ambiguous, is to get at the intention of the parties who made them. Sedalia Brewing Co. v. Waterworks Co., 34 Mo. App. 49; Ice Co. v. Heinze, 102 Mo. 245; Crater v. Arnold, 134 Mo. 195; Belch v. Miller, 32 Mo. App. 387. There is no better way for the court to arrive at his actual intent than to put itself, as near as may be, in the situation of the grantor, at the time of the execution of the instrument. Speed v. Railroad, 163 Mo. 111. We are to seek for the intention of the grantor. Broadman v. Teed, 6 Pet. 328. Instead of giving to the language used in a deed or will an unbending or rigid interpretation, as was done by the courts in former times, that rule has been broadened, as the science of law has advanced, so that now the language used in such instruments is construed so as to carry into effect the intention of the parties, and not literally as written. Speed v. Railroad, 163 Mo. 111; Lawson on Contracts, secs. 386, 387, 388 and 389. (2) The

courts will examine the whole of the contract to arrive at the intent. It is a fixed principle in the construction of deeds that monuments, when called for in the descriptions in a deed, will control calls for courses and distances. Burnham v. Hitt, 143 Mo. 414; West v. Bretelle, 115 Mo. 653; Shewalter v. Pirner, 55 Mo. 218; Whitehead v. Reagan, 106 Mo. 236; Kronenberger v. Hoffner, 44 Mo. 194; Gibson v. Bogy, 28 Mo. 478; Johnson v. Boulware, 149 Mo. 451; Rutherford v. Tracy, 48 Mo. 325; 3 Washburn, Real Prop. (4 Ed.), 405. Natural monuments are of higher value, yet artificial ones control courses and distances. Whitehead v. Reagan, 106 Mo. 231; Kronenberger v. Hoffner, 44 Mo. 185. Adverse possession is not merely an occupancy; nor is it merely a staying on the premises in broad daylight. In addition to these things there must be an assertion of exclusiveness—an exclusiveness not only of possession but of title as well. The court erred in its finding, mistaking defendants' hostile feeling toward the person of plaintiff for an adverse design on his estate. Defendants did become adverse about the time this suit was instituted; their possession was never so. Crawford v. Ahrens, 103 Mo. 88; Finch v. Ullman, 105 Mo. 255; McWilliams v. Samuel, 123 Mo. 659; Milling Co. v. Riley, 133 Mo. 586; Patton v. Smith, 171 Mo. 231.

*Jones Bros.* and *C. H. Shubert* for respondents.

(1) The evidence shows that defendants and their immediate grantors took possession of the disputed thirteen inches of ground many years prior to 1891 and in that year constructed the thirteen-inch brick wall on said ground. This unequivocal conduct was sufficient to indicate that defendants and grantors then and there established a holding adverse to title of any other claimant. Hunnewell v. Adams, 153 Mo. 444; Cole v. Parker, 70 Mo. 372; Handlan v. McManus, 100 Mo. 124; Battner v. Baker, 108 Mo. 311; Goltermann v.

Schiermeyer, 111 Mo. 404; Shotwell v. Gordon, 121 Mo. 482; Hedges v. Pollard, 149 Mo. 224; Meyers v. Schuchmann, 182 Mo. 159. (2) Defendants are not in the position of one holding in ignorance of true line and who intends to hold only to the true line. By their act of building a permanent brick wall, defendants and grantors said, in effect louder than words, ''Here is the true line.'' Prescription ripened such to perfect title. Walbrunn v. Ballen, 68 Mo. 166; Handlan v. McManus, 100 Mo. 124; Irwin v. Woodmansee, 104 Mo. 403; Battner v. Baker, 108 Mo. 311; Davis v. Brasswell, 185 Mo. 576; Draper v. Smoot, 25 Mo. 201. (3) Defendants' deed calls for the ground on which this wall stands, makes color of title, and if there was any defect in the description it is cured by prescription. (4) The circuit court is the judge of the weight of the evidence in a case at law, in the absence of a jury. There was ample evidence from which the court could find that the holding of defendants was adverse from its inception. Handlan v. McManus, 100 Mo. 124; Irwin v. Woodmansee, 104 Mo. 403; Battner v. Baker, 108 Mo. 311.

VALLIANT, J.—Ejectment for a small strip of land in lot 5, block 57, of the County Addition to the city of Rolla. The material facts are as follows:

David W. Malcolm in 1870 owned 58 feet of lot 5 fronting Seventh street. In 1881 Edward Luster, the grandfather of the defendants, the Joneses, while they were minors, bought for them a part of that 58 feet, the extent and description of which is the point in dispute in this case. In 1884 Luster bought for himself 30 feet of the 58 lying east of the lot he had previously bought for his grandchildren. Measuring 30 feet off the east left 28 feet of the 58. That 28 feet is claimed by the defendants. In 1886 Luster sold the 30-foot lot to one Sears, and it is now owned by the plaintiff, it having been conveyed to him by deed April 2d, 1903.

While Luster owned the 30-foot lot he built a brick house on the 28-foot lot belonging to his grandchildren, the Joneses, the east wall of which the plaintiff now contends is thirteen inches over the line on his lot. That house was built over twenty years ago and has been in the possession of the Joneses through their tenants ever since. Plaintiff and those under whom he claims have paid the taxes on the 30-foot lot from 1892 down to date.

Shortly before this suit was begun, the plaintiff, intending to build on his lot, had it surveyed, and then discovered (or thought he did) that the east wall of defendants' house encroached on his territory. He spoke to Mr. Jones about it, and made him a proposition to which he said he would consent subject to the approval of his sister, his cotenant. But when the contract was sent to the lady to sign she declined to do so and the negotiation ended; then the suit was brought.

The defendants Gordon and Hammer are tenants of the other defendants, Thomas E. Jones and Jessemine Cassell, nee Jones. In their answer they admit possession and deny all allegations and plead adverse possession for more than ten years. The cause was tried by the court, jury waived, the finding and judgment were for the defendants and plaintiff appealed.

There were instructions asked, some of which were given and some refused, but we do not consider it necessary to cumber the record with them in detail; the only question in the case is, did the evidence show that the defendants had been in adverse possession for a period long enough to give them title to the thirteen-inch strip in dispute?

In 1881 when Luster bought the west twenty-eight feet for his grandchildren, the Joneses, the title to the thirty feet lying east of it was owned by Mrs. Burke. But in 1884, before the house was built, Mrs. Burke sold the lot to Luster, and while he owned it he built the house for his grandchildren, and if it lapped over

the line it was on his land. The deed to the Joneses was on record when the house was built, and the house was there in 1886, when Luster sold to Sears, through whom plaintiff took title. If, therefore, the description in the Jones deed was sufficient to cover the strip of land in dispute, the record of it was notice sufficient of adverse possession under color of title. But plaintiff contends that the description in the deed was not sufficient; it was as follows: "Commencing twenty-six feet west of the southeast corner of lot No. five, in block fifty-seven, of the County Addition to the city of Rolla, being the southwest corner of the portion of said lot formerly owned by Mary M. Burke, and where she now resides, and running thence north, on a line corresponding with the original survey of said block in the original plat thereof, twenty-six feet, thence west on a line corresponding with said survey twenty-six feet or to and intersecting the northeast corner of a lot formerly owned by Andrew Malcolm, purchased by him of one Watkins, and also formerly owned by one William Robeson, and being a portion of lot No. four in said block, and running thence south from said northeast corner of said Robeson lot, along and with the east line of said lot formerly owned by said Andrew Malcolm, to said Seventh street, to the place of beginning."

The following diagram may aid in understanding the point in dispute.

The space between the dotted lines indicates the strip in dispute.

The line AB is 28 feet; BD is 30 feet; CD is 26 feet; D being the southeast corner of the lot, is the starting point to find the point of beginning called for in the deed; going west from D 26 feet we come to C, the point of beginning; thence north along the dotted line 26 feet; thence west 26 feet or to and intersecting the northeast corner of the lot formerly owned by Andrew Malcolm, thence south along the east line of the Malcolm lot to Seventh street, "to the place of beginning." Appellant construes the words last quoted as being equivalent to saying, "to 7th street, the place of beginning." But to place that construction on the words used would be to stop the description at A, giving the north, the west, and the south courses, but not giving the east course, and not in fact reaching the place of beginning. A is in the north line of Seventh street, but it is not the place of beginning; C, also in the north line of Seventh street, is the place of beginning.

The confusion in the plaintiff's mind arises from the omission of the word "thence" between the words "Seventh street" and the words "to the place of beginning." If it was intended to say to "Seventh street, the place of beginning" not only would it be a contradiction of an evident fact, but the word "to" would have to be stricken out, because "to," as a preposition, indicates motion in the direction of place. [Webster.] Following the description around the lot on three sides and arriving at A, the words "to the place of beginning" mean *thence* to the place of beginning. Plaintiff contends that it was the intention of the grantor to convey the west twenty-six feet of the fifty-eight-foot lot, and that that intention is shown by the monuments called for in the deed which correct the metes and bounds. When real monuments are called for in the description in a deed they are ordinarily given precedence over distances called for. [Myers v. St. Louis,

82 Mo. 373; Orrick v. Bower, 29 Mo. 210; Evans v. Temple, 35 Mo. 494.] But what plaintiff calls monuments in this description are not real monuments. A monument is a fixed, visible object. What the plaintiff calls monuments in this description are "the southwest corner of the portion of the said lot formerly owned by Mary M. Burke, and where she now resides," and, "the northeast corner of a lot formerly owned by Andrew Malcolm," etc. Those corners as there described are not monuments; if there is anything fixed and visible about them appellant has not in his abstract called our attention to it. Those corners, as far as we are informed in appellant's abstract, are no more established than are the disputed lines of description in the Jones deed. From the fact that the grantor who formerly owned fifty-eight feet had, previous to the making of this deed to the Joneses, sold the east thirty feet to Mrs. Burke, it is reasonable to infer that he intended to convey the remaining twenty-eight feet by this deed, and of course he could not convey to the Joneses thirteen inches of property that he had already sold to Mrs. Burke, but if the description in the deed called for this thirteen-inch strip and the Joneses put their deed on record and afterwards took possession of the land described in their deed, including this thirteen-inch strip, their possession was under color of title. In 1884 Luster, the grandfather of the Joneses, then minors, bought the thirty feet of Mrs. Burke and while he owned it he built the house whose east wall is now the cause of this lawsuit. For more than twenty years the Joneses have been in open and visible possession of the house and lot, exercising the acts of ownership over it, and there was no question of their title or right to the possession until a short while before this suit was brought.

From the fact that Luster in 1886 sold the thirty-foot lot to Sears, it is plausibly argued that when he built the house for his grandchildren and located the

east wall thirteen inches over on his own land he did so by mistake, and that when he sold to Sears he was not aware that such a mistake had been made. There is, however, no conclusive legal presumption to that effect. And if it were the fact it would not change the character of the defendants' possession. They were then in possession by their guardian, their father, and there is no evidence tending to show that they had entered into or held possession as on a disputed or doubtful line, intending to yield it when the true line should be discovered. There is nothing in the evidence to introduce such an idea in the case. Their possession and acts of ownership have been unconditional and unequivocal.

Appellant relies on the fact that when he had the survey made, a short while before bringing this suit, he spoke to Mr. Jones on the subject and offered to have the wall torn down, and rebuilt at his own expense, on what he claimed was the true line, "fix up the butcher shop" and give Jones the use of the wall as long as the butcher shop remained as it then was. Jones agreed to it subject to the agreement of Mrs. Cassell; the agreement was written, signed by Jones, and sent to Mrs. Cassell for her approval and signature, but she refused to sign it, and so the matter ended. Appellant contends that that action on the part of Jones showed that the possession was not adverse, and he asked an instruction to that effect which the court refused.

In the first place there was no such agreement consummated. Jones could not agree to dispose of his sister's land, and he only agreed to execute the contract, even as to his own interest, on the condition that his sister would sign it. He testified that he agreed to it as a compromise, by which we infer he meant to avoid a lawsuit. The wall which Jones and his sister owned jointly could not be destroyed without the consent of both. Plaintiff seeks to draw from the fact of Jones's

willingness to sign the agreement, the inference of his acknowledgment that the possession of himself and his sister was not adverse, but even if such an inference could be drawn it could not have the effect to reach back twenty years and defeat title already acquired.

Plaintiff introduced in evidence tax receipts showing that he and those under whom he claims had paid taxes on "The undivided east frac. Lot 5, Block 57," from 1892 down to 1905 inclusive. But that description is indefinite. How large the fraction on which the taxes were paid is not shown in the abstract.

The trial court took the correct view of the law. The judgment is affirmed. All concur.