Walter S. CZARNECKI and Janice M. Czarnecki, Plaintiffs-Appellants,

v.

PHILLIPS PIPE LINE COMPANY et al., Defendants-Respondents.

Nos. 35731, 35887.

Missouri Court of Appeals, St. Louis District, Division One.

April 8, 1975.

Motion for Rehearing or to Transfer to Supreme Court Denied May 19, 1975.

Application to Transfer Denied July 14, 1975.

Joe Bill Carter, Clayton, for plaintiffs-appellants.

Lashly, Caruthers, Thies, Rava & Hamel, Albert H. Hamel, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, Bryan, Cave, McPheeters & McRoberts, Veryl L. Riddle, St. Louis, for defendants-respondents.

WEIER, Presiding Judge.

In this court tried case, at the conclusion of all of the evidence, the court rendered judgment in favor of defendants Anheuser-Busch, Inc. and St. Paul Title Insurance Corporation as to Counts II and III of the petition. Counts I and IV against defendant Phillips Pipe Line Company were taken under advisement, and some months later the court rendered judgment on those counts in favor of the defendant Phillips Pipe Line Company. The plaintiffs appealed from each judgment. Thereupon, both appeals were consolidated and submitted as one in this court. After a consideration of the contentions advanced by plaintiffs, we have determined that they have no merit and affirm the judgments below.

Walter S. Czarnecki and Janice M. Czarnecki purchased a residence and lot in St. Louis County, Missouri on May 14, 1971. They knew when they purchased the property that there was a pipeline easement across the rear of their lot. The real estate salesman had pointed it out as being at the back of the lot. But their concern which precipitated the filing of this lawsuit assumed major proportions when in the early part of March, 1972 Mr. Czarnecki came home from work, went out to his backyard and saw stakes at both sides of his property, and found that the defendant Phillips Pipe Line Company was going to construct a new pipeline which would be very close to the back of his residence. The petition upon which the suit was tried consisted of four counts. Count I sought an injunction against the defendant Phillips. It alleged that the defendant Phillips by reason of certain recorded right-of-way documents had acquired an interest in the plaintiffs' property and that because of an alleged mutual mistake of fact between Phillips and Czarneckis' predecessor in title, Phillips was planning to construct its pipeline outside of the easement area and therefore should be enjoined. Count II was an action for $20,000.00 in damages against St. Paul

Title Insurance Corporation for alleged negligence in issuing its certificate of title which, according to plaintiffs, failed to indicate that Phillips actually had two or more easements running through the property. Count III was an action for damages in the sum of $20,000.00 against the defendant Anheuser-Busch, Inc., the grantor in the warranty deed conveying the real estate to the plaintiffs. Plaintiffs complained that the deed referred only to a right-of-way thirty feet wide and failed to show that the pipelines were not within the easement described but rather outside of the boundaries of this thirty foot right-of-way. Count IV was an action in trespass for damages against the defendant Phillips alleging that the pipelines were not within the thirty foot easement. Copies of the instruments describing the easement were attached and made a part of the petition. To illuminate the issues, we set forth a chronology of events concerning the easements presented by the evidence.

The first pipeline was an eight inch line installed on the premises in 1930. No document was introduced in the evidence concerning this original construction and we assume that none was recorded. The first document introduced in the evidence was entitled "Right-of-way Grant" and was executed on the 20th day of August, 1941 by Eva Meyer and Ferdinand Meyer, and recorded in the recorder's office of St. Louis County. This purported to grant to Phillips Petroleum Company, the predecessor in interest to the defendant Phillips Pipe Line Company, the right to maintain an existing pipeline and construct one additional pipeline across certain land. This land was later subdivided and one of the lots became the subject of this suit. The description contained in this grant to Phillips read as follows: "A tract thirty feet wide across that portion of the West half of the Northeast Quarter of Section 4, Township 43 North, Range 6 East in St. Louis County, Missouri, which lies North of the Mattese

Road containing 40.80 acres, more or less. The center line of the above thirty foot tract is the Grantee's present pipe line, as now located and laid, more particularly described as follows: Entering the above described property at a point in the West boundary line approximately 20 feet South of the Northwest Corner and running in a Northerly (sic) direction approximately parallel to the North line of said property and leaving said property at a point in the East line approximately 20 feet south of the Northeast Corner of the above described property."

On September 25, 1951 a second instrument entitled "Supplemental Right-of-way Grant" was executed by Guy and Anna Burnette to Phillips Pipe Line Company. This incorporated by reference the first document and proposed to amend the first right-of-way grant to allow Phillips to construct a 10¼ inch pipeline alongside the existing 8 inch pipeline, the prior grant having limited the size of any additional pipeline to 8 inches. This second document describes two tracts, each a little larger than five acres, across which the pipeline easement ran. But aside from referring to the previous recording, it did not specifically locate the easement within the tracts described.

The third right-of-way instrument was executed on January 9, 1967 by Charles R. Kruse and Doris M. Kruse, his wife, wherein they granted to Phillips the right to construct, operate, inspect, maintain and remove its present pipelines and additional pipelines which may be laid in the future, describing the right-of-way granted as follows: "A tract of land being thirty feet (30′) wide across Lots 15–16 & 17, Sir Winston Estates, plat of which is recorded in Book 118, Page 25, Records of St. Louis County, Missouri. The center line of the above thirty foot (30′) tract being the Grantees' present existing eight inch (8″) pipe line as it is now located on said premises. The said eight inch (8″) pipe line being

the most northerly of two existing pipelines owned by Grantee. (Book 6134, page 133.)" This document does not refer to any of the previous documents above described. It should be noted that the execution of this instrument followed by five days a meeting between the right-of-way agent of Phillips and Mr. Kruse, who together with his wife owned the property at that time and who was constructing a house on the premises. This meeting came about because the house was being built very near the southernmost of two parallel pipelines of Phillips. The pipelines were uncovered and they were observed in relation to the house then being built. It was at this time that the third instrument was drawn up and executed.

■ Plaintiffs, on appeal, first contend that the court erred in rendering judgment on Count I of their petition in favor of defendant Phillips Pipe Line Company because the third easement executed January 9, 1967 was executed under mutual mistake of fact and that the legal description was insufficient to locate the new easement, resulting in the existence of a continuous trespass across the property by reason of the location of pipelines outside the only easement of record. The answer to the first part of this contention is found in the facts that support the court's judgment. The defendant Phillips wanted to and did clarify the location of the easement by a new agreement with the then owners of the premises in 1967 so that there would be no doubt as to its right to have working room and the right to install an additional pipeline. This right-of-way contract dated January 9, 1967 followed closely the conference of the right-of-way agent of Phillips with the owner-builder at the subject premises and the observation of the uncovered pipelines in relation to the house which was then being constructed. Under those circumstances there could be no mutual mistake of the parties since each clearly knew what the situation was with respect to the location of the pipelines. Mutual mistake

has been defined as one common to both contracting parties, wherein each labors under the same misconception as to a past or existing material fact. Artman v. O'Brien, 398 S.W.2d 24, 27[4] (Mo.App.1965).

The second part of plaintiffs' contention of error as to the court's judgment on Count I of plaintiffs' petition, that is, that the legal description in the 1967 right-of-way was insufficient, and plaintiffs' contention on appeal that the judgment as to Count IV of plaintiffs' petition denying plaintiffs damages against defendant Phillips for trespass in that defendant Phillips' pipelines are not within the thirty foot easement area, blend into each other in the sense that what plaintiffs are essentially saying is that the descriptions contained in the easement documents were such that the easement could not be properly located upon the premises. If located by the metes and bounds description contained in the first instrument, it would place that easement in a different location than where the pipes are actually located, thus giving rise to a claim of trespass. We will therefore consider both of these matters at the same time to prevent undue length and repetition in the opinion.

 It may be stated as a general rule that any description in the conveyance of an interest in real property is sufficient if it affords the means of identification of the property. Such a conveyance will not be declared void for uncertainty of description unless, after resorting to oral proof or after relying upon other extrinsic or external proof or evidence, that which was intended by the instrument remains a mere matter of conjecture. Hamburg Realty Company v. Woods, 327 S.W.2d 138, 150[2, 4] (Mo. 1959). Thus, in a case where the validity of a utility easement was assailed by a successor to the grantor of the easement because it did not sufficiently describe the course along which a power line was to be constructed, the court determined that since the easement gave the power company the right to enter a specifically described tract of land and erect, construct and maintain its transmission line over, along and across the land, the evidence indicating that the line had been constructed, that the consideration had been paid, and that it had been maintained openly for more than thirty years, were such circumstances as to prevent the easement from being void for indefiniteness. Kansas City Power & Light Company v. Riss, 319 S.W.2d 262, 264[2] (Mo.App.1958). There, no center line was described. The novelty of the situation here is that the easement does not call for the erection of a utility line over and above the surface of the ground but rather the construction and maintenance of a pipeline to be buried beneath the surface. The eight inch line of 1930 is the center line of the easement described in both the first and third grants of right-of-way. The question then arises: Is the eight inch pipeline constructed thirty-seven years before the execution of the third right-of-way instrument such a monument as to give definiteness to the description and make it possible to locate the thirty foot easement across plaintiffs' property?

 Monuments, of course, are among the more important indicias of boundaries. They are classified into natural and artificial. Natural monuments are permanent objects found on the land as they were placed by nature. Artificial monuments are landmarks or signs erected by the hand of man. 11 C.J.S. Boundaries §§ 6 and 7, pages 546, 547. "[I]t is one of the settled rules of the law of boundaries that calls for courses and distances, quantity, etc., will, in case of a conflict, be controlled by, and yield to, one for a natural object or landmark or permanent artificial monument." 12 Am.Jur.2d Boundaries, § 67, page 604; Houska v. Frederick, 447 S.W.2d 514, 518 (Mo.1969). A monument has been defined as being a "fixed, visible object". Koch v. Gordon, 231 Mo. 645, 133 S.W. 609, 610 (1910). Considering this definition, an eight

inch pipe buried in the ground is certainly a fixed object and is visible if uncovered. The mere fact that it is generally covered would not necessarily destroy its position and significance as a monument since it can always be uncovered and made visible. It is in much the same situation as a cornerstone that is covered by a deposit of eroded soil, or an iron stake which has been covered by vines and other vegetation. In most cases, in fact, it would be in a better state of preservation than most artificial monuments because of its protection from the environment. That buried monuments have been used and sometimes favored in surveying in the past is indicated in Clark's "Treatise on the Law of Surveying and Boundaries", First Edition 1922, § 217, page 202, wherein the author suggests that memorials, such as glass, stoneware, marked stones, cast iron, charcoal, or charred stakes buried twelve or twenty-four inches under the surface be used at corners. In this work, the author particularly recommended buried charcoal or stone pottery because of their durability and effectiveness. Brown in "Boundary Control and Legal Principles", page 166, ff. (1957), in discussing the durability of monuments comments on the fact that unfortunately most of the cornerstones used for that purpose have been destroyed where cultivation or construction work has been in progress. Mounds of stone become weathered and concealed by bushes and shrubs. Posts or wooden stakes set as corners are seldom found in later years. Pits and mounds are frequently filled and eroded until hardly recognizable.

In the controversy before us, even though the eight inch pipeline is buried under earth, it can be located and has a quality of permanence that can be claimed for few artificial monuments. The description used in the third instrument executed in 1967 is definite and one that can be used by a surveyor to determine the extent of the easement conveyed. As to the first easement (the right-of-way grant of 1941), since the eight inch pipeline was used as a monument for determining the position of the pipeline easement, it would govern over the inaccurate and vague course and distance description. Houska v. Frederick, *supra*, 417 S.W.2d 514, 518 (Mo.1969). The judgment favoring Phillips Pipe Line Company is therefore affirmed as to both Counts I and IV.

◼ We turn our attention to the judgment of the trial court favoring defendant Anheuser-Busch, Inc. and St. Paul Title Insurance Corporation. Plaintiffs contend that this judgment was in error in that the warranty deed executed by Anheuser-Busch and the certificate of title executed by St. Paul Title Insurance Corporation each subjected the title of the property to this encumbrance: " 'right-of-way, thirty feet wide, granted to Phillips Petroleum Company, according to instrument recorded in Book 1779, Page 564; Book 2991, Page 325; Book 6134, Page 133.' " The trouble, they assert, is that the encumbrance described as a thirty foot right-of-way is in the singular whereas under legal descriptions contained in the first instrument the easement for that pipeline would be to the rear of the property and the easement described in the third instrument because of the location of the eight inch pipeline referred to therein is in a different location. Because the easement referred to in the deed and title is referred to in the singular rather than the plural, plaintiffs submit that there is an undisclosed permanent easement on the land of which the purchaser had no actual or constructive knowledge. The exception set out in the deed and title referred to three different recordings, indicating that there could be three different instruments. Furthermore, the position that we take is that there is only one easement described by these instruments and the eight inch pipeline is the center line of the easement. Its location is governed by the location of the pipeline upon the land. As a monu-

ment, its location takes precedence over the course-and-distance description set out in the 1941 instrument where the pipeline line was described as being parallel to the north line and approximately twenty feet distant from it. There was only one thirty foot right-of-way across the plaintiffs' land of which the eight inch pipeline was the center line. The choice of singular form rather than plural in describing the easement was correct even though there were three instruments that had to do with the easement itself. The certificate of title and the warranty deed did not mislead the plaintiffs but indicated that there was a thirty foot easement across the land and that the easement was described or referred to in three different recordings with the book and page number of those records. The fact that only one easement was described in the encumbrance which further referred to three different recordings should have caused the plaintiffs-purchasers to be more careful to ascertain the location of this easement before they accepted the warranty deed and paid the purchase price for the premises. The description of the 1967 or third grant, with no courses and distances should have especially alerted the plaintiffs to the importance of ascertaining the easement's location before closing their transaction. We find no merit in the contentions of plaintiffs as to error in the judgment favoring defendants Anheuser-Busch, Inc. and St. Paul Title Insurance Corporation.

The judgments are affirmed.

DOWD and RENDLEN, JJ., concur.