Ray OLLISON and Helen Ollison, Respondents,

v.

VILLAGE OF CLIMAX SPRINGS, Appellant.

No. 78532.

Supreme Court of Missouri, En Banc.

Feb. 20, 1996.

John E. Curran, Julie Jinkens McNitt, Osage Beach, for appellant.

Gary W. Lynch, Bolivar, for respondents.

Jeremiah W. (Jay) Nixon, Atty. Gen., Amy E. Randles, Asst. Atty. Gen., Jefferson City, Mo. Dept. of Natural Resources, for amicus.

PER CURIAM.[1]

In 1991 plaintiffs Ray Ollison and Helen Ollison, husband and wife, brought this quiet

1. The appeal in this case was originally decided by the Court of Appeals, Southern District, in an

title action against defendant Village of Climax Springs, a municipal corporation ("the Village"), and other defendants. The Village was the only defendant that appeared and defended.

The petition sought a judgment declaring that plaintiffs have title in fee simple absolute to a tract of land, described by metes and bounds, in Camden County ("the Ollison property"). The petition alleged that plaintiffs based their claim of title on a recorded deed and on adverse possession. The petition also alleged that plaintiffs and their predecessors in title "have maintained a fence on the east boundary of [the Ollison property] for a period of 60 years."

The answer of the Village admitted that it was a municipal corporation, and denied most of the other allegations in the petition. Paragraph 9 of the answer reads:

> 9. That [the Village] is the holder of an easement for public use, subject to a possibility of reverter to Climax Springs Association. Said parcel is designated as City Spring Park, as shown by the plat of Climax Springs filed at Plat Book 1, page 14, Records of Camden County, Missouri, and if the plaintiffs are claiming some interest in and to said park, [the Village] is making an adverse claim to these plaintiffs.

The answer also alleged: plaintiffs' claim was "barred by res judicata" by reason of judgment entered on December 19, 1984, in a prior action [Case I]; plaintiffs' claim "is barred for the reason that the same was a compulsory counterclaim in [Case I], and the matter was not raised at that time"; plaintiffs are the owners of Block Fifteen "of the town of Climax Springs and [the Village] makes no claims to Block Fifteen"; and plaintiffs' claim "is one of adverse possession and if their claim includes any land not within the boundaries of Block Fifteen, then the same is barred for the reason that adverse possession will not run against [the Village]."

The answer was accompanied by a counterclaim in which the Village alleged that it was "the owner of and entitled to possession of the following described property, located in Camden County, to wit: All of Spring Street, Jackson Street, Park Street, Murry Street, and City Spring Park as shown by the plat of the town of Climax Springs" and "[t]hat the plaintiffs are unlawfully withholding possession of portions of the above described real estate." The counterclaim prayed judgment against the plaintiffs "for recovery of said real estate."

A nonjury trial was held on March 17, 1993. Plaintiffs' witnesses were plaintiff Ray Ollison and land surveyor Eddie Whitworth. The Village's witness was land surveyor Dexter Slagle. The trial court found the issues in favor of the plaintiffs, and against the Village, on the petition and on the counterclaim.

The judgment found that plaintiffs were the legal owners of the Ollison property and the Village "has no interest in or to the Ollison property by virtue of the Plat of Climax Springs recorded in Plat Book 1 at page 14 of the Deed Records of Camden County, Missouri, or by virtue of any other legal document or by any legal or equitable right." The judgment also recited that title to the Ollison property was vested in plaintiffs "by virtue of § 516.010,[2] and by virtue of [the Village's] lack of any legal or equitable interest therein." The Village appeals.

■ The Village's first point is that the trial court erred in not dismissing the action because plaintiffs' claim was barred, on res judicata principles, by the judgment in Case I, and because plaintiffs' claim was barred by failure to assert it as a counterclaim in Case I. The fatal flaw in this point is that Case I did not involve the title to the Ollison property.

Res judicata is an affirmative defense. *Rule 55.08*. Although the Village's answer pleaded that defense, there was no evidence to support it. Case I involved the title to City Spring Park. The instant petition made no claim to City Spring Park, and the trial

opinion written by The Honorable George M. Flanigan. Following transfer to this Court, the court of appeals opinion, with minor editorial changes, is adopted as the opinion of this Court.

2. Except as otherwise indicated, all references to statutes are to RSMo 1994, and all references to rules are to the *Missouri Rules of Court 1995*.

theory of the Village was that the Ollison property was west of City Spring Park and that the two tracts are separate and distinct.

■ "[T]he doctrine of res judicata applies to judgments in quiet title actions. *Randall v. Schmidt*, 159 S.W.2d 637, 639 (Mo.1941); *Hutchinson v. Patterson*, 226 Mo. 174, 126 S.W. 403, 404–05 (1910); *Autenrieth v. Bartley*, 238 Mo.App. 55, 176 S.W.2d 546 (1943)." *Moore v. Beck*, 664 S.W.2d 15, 18[6] (Mo.App. 1984).

Section 527.150 deals with actions to quiet title. Although the statute does not specifically state that the petition must describe the land involved, it uses such terms as "title, estate or interest in *such* property" and "the estate, title and interest of said parties, respectively, in *such real estate*" and "adjudge by its judgment or decree the title, estate and interest of the parties severally in and to *such real property*." (emphasis added).

■ Missouri case law requires that the petition and judgment describe the land involved. "It is universally held that judgments should describe with reasonable certainty the land adjudicated therein, both in ejectment and actions to determine title." *Curd v. Reaban*, 232 S.W.2d 389, 391 (Mo. 1950). Similarly, in *Hartvedt v. Harpst*, 173 S.W.2d 65, 68[6] (Mo.1943), an action to quiet title, this Court said: "If the real estate in controversy could not be identified from the description given in the petition, no cause of action was stated."

■ In order to have estoppel by a former judgment (res judicata), four elements must be present. *King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991). The first element is "identity of the thing sued for," which is alternatively stated as "subject matter of the suit." *Barkley v. Carter County State Bank*, 791 S.W.2d 906, 910 (Mo.App.1990); *see also Winter v. Northcutt*, 879 S.W.2d 701, 708 (Mo.App. 1994); 46 Am.Jur.2d Judgments § 531; 50 C.J.S. Judgments § 652. The first element is absent here.

The appeal of Case I is reported in *Village of Climax Springs v. Camp*, 681 S.W.2d 529 (Mo.App.1984). In Case I, the Village sought to quiet title to "City Spring Park." The plat of the Village of Climax Springs, which was received into evidence without objection in the instant action as Exhibit C, was also received into evidence in Case I. In Case I the court of appeals held that title to City Spring Park was vested in the Village by dedication, and that the public would not lose its interest merely by neglect or failure to care for the park.

A judgment in an action to quiet title "affects only the land directly involved." 50 C.J.S. Judgments § 738. In successive quiet title actions involving the same parties or their privies, a judgment in the first action is not res judicata with respect to the second action if the land involved in the second action is separate and distinct from the land involved in the first action. *Farrell v. Brown*, 111 Idaho 1027, 1031, 729 P.2d 1090, 1094[4] (App.1986); *Girard Trust Co. v. McGeorge*, 128 N.J.Eq. 91, 15 A.2d 206, 212 (N.J.Ch.1940); *Penrose v. Absecon Land Co.*, 94 N.J.Eq. 436, 120 A. 207, 208[4] (N.J.App. 1923); *Lawrence v. Ayres*, 206 Okl. 218, 242 P.2d 142, 146[2] (1952) (overruled on other grounds by *Gardner v. Jones*, 309 P.2d 731 (Okla.1956)); *Hanrick v. Gurley*, 93 Tex. 458, 54 S.W. 347, 351[5] (1899). *See also State by Price v. Magoon*, 75 Haw. 164, 858 P.2d 712, 725 (1993); *Hangman v. Bruening*, 247 Neb. 769, 530 N.W.2d 247, 249[3] (1995); *Valdez v. Smith*, 38 N.M. 345, 32 P.2d 1022 (1934); *Hanrick v. Gurley*, 93 Tex. 458, 56 S.W. 330[1] (1900); Restatement, Second, Judgments § 30.

This Court holds that the judgment in Case I is not res judicata with respect to this action because the land involved in Case I was separate and distinct from the land involved in this action. For the same reason, the Village's argument that plaintiffs' claim was barred by failure to assert it as a counterclaim in Case I has no merit.

Rule 55.32(a) provides, in pertinent part: "A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . ." The subject matter

of Case I is not the subject matter of this action. *See Farrell,* 111 Idaho at 1031, 729 P.2d at 1094[4]. The Village's first point has no merit.

The Village's second and third points will be considered together. The Village contends that the trial court erred: (2) in ruling that plaintiffs held title to the Ollison property by virtue of § 516.010, the ten-year statute of limitations, because § 516.090[3] rendered § 516.010 inapplicable in that plaintiffs were estopped from denying the existence of the streets shown on the plat (Exhibit C) because plaintiffs received their deed to Block Fifteen as described in the plat and thereby approved and adopted the plat; (3) in rejecting Exhibits D and E, two surveys made by surveyor Slagle, and his testimony concerning the same, because the evidence was admissible under § 60.150.

Plaintiff Ray Ollison testified that he and his wife Helen received a deed for "all of Block 15 of the original plat of the Town of Climax Springs, Missouri," in February 1989. He testified that in September 1990, persons acting on behalf of the Village tore down the eastern fence on the Ollison property. He employed surveyor Eddie Whitworth, the Camden County surveyor, to make a survey of the Ollison property and to provide a metes and bounds description of it.

Ollison further testified: My parents bought the Ollison property in 1928; since then, the Ollison property has been fenced; the fences have never been located other than where they are now; in September 1990 [the Village] tore down the fence on the east side of the Ollison property; the deeds under which I claim described the Ollison property as Block 15; none of the deeds indicated ownership of anything other than Block 15.

Whitworth testified: I could not tell where Block 15 was. We could not use the old plats to reproduce Block 15 because the original plat is not tied to any original government corners. In that survey, I did not attempt to locate the City of Climax Springs. None of what I have done would help anybody locate Block 15. I see no scale on Exhibit C, the

plat of Climax Springs. My survey (plaintiffs' Exhibits 6–A and 6–B) "ties to a government corner."

During his direct testimony, Whitworth referred to measurements he had drawn with respect to "two Southwestern Bell disks that we tied to because we wanted to get something close to our property." He said that he did not use the Southwestern Bell monuments to determine where the government corner or the Ollison property were located. He said he could not use those monuments to locate any city streets, but he used them "to get into town," and "to get a fixed monument within a town" because they were "immovable objects."

Exhibit C, offered by the Village and received into evidence without objection, is a document entitled "Plat of the Town of Climax Springs," filed for record January 4, 1915. It also bears the date of October 28, 1895, as attested by "Henry Laswell, Recorder." Laswell's certificate states that the plat is "a true copy of the record of the plat of the survey of the original town of Climax Springs and of eastern and western additions thereto as the same appears of record in my office."

According to Exhibit C, Block 15, the land described in plaintiffs' deed and chain of title, consists of eight lots: Lots 113 through 120. Lots 113 through 116 front on and lie west of Spring Street. Lot 114 is immediately north of Lot 113, Lot 115 immediately north of Lot 114, and Lot 116 immediately north of Lot 115.

Lot 117 is the northernmost of the other four lots and lies west of Lot 116. Lot 118 lies west of Lot 115, Lot 119 west of Lot 114, and Lot 120 west of Lot 113. The four western lots are separated from the four eastern lots by an alley. No specific dimension is stated for the width of the alley or of Spring Street.

Exhibit C does not state whether it is drawn to scale. It does state that all eight lots on Block 15 are "66 feet × 132 feet." It is clear that the 66 feet measurement is from

---

**3.** "Nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this state."

north to south, and the 132 feet measurement from east to west for each lot. The eight lots in Block 15 have a total area of 69,696 square feet. The area of the Ollison property substantially exceeds 69,696 square feet.

The Village's only witness was Dexter Slagle, a registered land surveyor. Slagle testified: I was hired by the Village to do a survey establishing street lines and block corners in Climax Springs. In preparing my survey, I relied on prior surveys of parcels within and adjacent to Climax Springs, deeds of property located within Climax Springs, and Exhibit C. This is the type of information normally relied upon in making surveys. I prepared a plat of that survey, Exhibit D. I tied my starting point to an established government corner, the Northeast corner of section 30. From there I proceeded to locate other things within the Village, including monuments on the corner of the Southwestern Bell lot. I continued through the town of Climax Springs, locating fence lines and fence corners which were combined with measurements off Exhibit C to "determine the distance of the lots and things."

Slagle also testified: I was not able to locate any monument that I could relate to being placed there when Exhibit C was made. I used deeds and started out at the commercial end of town, old buildings, the post office. I used the deeds for Southwestern Bell and monuments located on that property. I located those monuments, using a 40–year–old survey made by a county surveyor. I started at a point within Block 12 and used measurements and distances off Exhibit C to locate and make measurements to find physical evidence of buildings and other improvements in the old section. The corners of what had been commercial buildings turned out to be very close to the block corners and lot corners described on the deeds and shown on Exhibit C. The Southwestern Bell monuments line up "very good, within inches" to the corners of the Southwestern Bell lot.

Slagle also testified: Basically I overlaid Exhibit C on certain positions and monuments and then measured from certain points to the government corner. There was nothing else I could do to locate the Village of Climax Springs.

On plaintiffs' objection, the trial court excluded Exhibit D, Slagle's survey, and Exhibit E, a blown up portion of Exhibit D, showing the Ollison property.

According to Exhibit C: Spring Street runs generally north and south and separates Block 15 from City Spring Park; Jackson Street runs generally east and west along the north side of Block 15; Park Street runs generally east and west along the south side of Block 15; Murry Street runs generally north and south along the west side of Block 15.

According to Exhibit D and E: The Ollison property is west of City Spring Park, but the east line of the Ollison property is located in Spring Street; that is, a portion of the Ollison property overlaps a portion of Spring Street. The Ollison property includes Block 15, but also includes portions of the four streets.

■■■ A dispute in which each owner admits the title of the other but disagrees as to the physical location of the boundary is not a title controversy, and the remedy is an action in ejectment and not an action to quiet title. *Hall v. Allen*, 771 S.W.2d 50, 52[1] (Mo. banc 1989); *Vanschoiack v. Adkins*, 854 S.W.2d 432, 435[2] (Mo.App.1993); *Moss v. Moss*, 706 S.W.2d 884, 888[5] (Mo.App.1986). "In an action to establish a boundary line, the party asserting a specific location of such a line bears the burden of presenting credible evidence to establish that location." *Hall*, 771 S.W.2d at 52[2].

■ A plaintiff in an action to quiet title has the burden to prove title superior to the other party, not superior to the whole world, and must prevail on the strength of its own title and not on any weakness in the title of the other party. *Willy v. Lieurance*, 619 S.W.2d 866, 869 (Mo.App.1981). *See also Humphrey v. Sisk*, 890 S.W.2d 18, 19 (Mo. App.1994).

■ "When a recorded map or plat of a subdivision is referred to in a deed conveying a portion of the tract, the map or plat becomes as much a portion of the deed as if it

were fully incorporated therein." *Wolf v. Miravalle*, 372 S.W.2d 28, 31[1] (Mo.1963).

In *George v. Jester*, 255 S.W.2d 783, 785 (Mo.1953), this Court said:

"In both those and similar cases the recorded plats showing the lots and streets could not be located by government surveys, but since both the plaintiffs and defendants claimed title under the recorded plats they would be bound by the plats." (emphasis added).

This Court referred to *Mothershead v. Milfeld*, 361 Mo. 704, 236 S.W.2d 343 (1951), and *City of Laddonia v. Day*, 265 Mo. 383, 178 S.W. 741 (1915). In *Mothershead*, 236 S.W.2d at 345[3], this Court stated:

The plat of the "Town of DeSoto" as executed, acknowledged and recorded September 24, 1857, makes no reference to any corner as established by the government, nor does it designate any monument as that used by the dedicators in surveying the land. The plat only purports to state that the "Town of DeSoto" as platted is situated on the "Southern part of U.S. Survey No 2008 in Township 39 Range 4E." The plat is defective. However, since plaintiff and defendants acquired their lots by conveyances describing the land by lot number according to the plat, the plat as the dedicators laid it out upon the land was a part of the conveyances by which defendant and plaintiff acquired title to their respective Lots 7 and 8. (authorities omitted).

■ Where parties take record title by deeds referring to a plat, they cannot dispute the dimensions of their respective properties as shown on the plat or question the location of their respective properties with regard to each other as shown on the plat. *Schell v. City of Jefferson*, 357 Mo. 1020, 212 S.W.2d 430, 434 (Mo. banc 1948); *Wright v. City of Joplin*, 275 Mo. 212, 204 S.W. 910, 914 (Mo. 1918); *City of Laddonia*, 178 S.W. at 744[3]; *Cantrell v. Bank of Poplar Bluff*, 702 S.W.2d 935, 940[3] (Mo.App.1985); *City of Marshfield v. Haggard*, 304 S.W.2d 672, 676[3] (Mo. App.1957). *See also* Land Titles and Land Law, McDermott's Desk Book, § 3.2li; American Law of Property, Vol. III, § 12.103 (1952).

In *City of Marshfield*, the court of appeals said at 676[2–4]:

It is true that, in surveying and locating a subdivision of a section, reference must be had to some established government corner or a corner reestablished in accordance with the statutes (sections 60.290, 60.300 RSMo 1949, V.A.M.S.). This is usually necessary to show the location of the subdivision of the section in relation to the section as a whole and in respect to the other portions, or to show the location of the other portion in reference to other sections. But in this case the parties are in dispute in regard to their relative locations within the same plat. Their quarrel would be the same no matter where in the section they were located. The city took the street as dedicated. The defendant took title to Block 5, Kentucky Row, Second Addition, by deed. In other words both took under the plat. The acceptance of these interests "estops" them from questioning the relative locations as they were platted, and they cannot dispute the description and location of their property in reference to each other as platted and laid out.

Under the foregoing authorities, it is clear that the trial court's judgment in favor of plaintiffs cannot stand. It is doubtful that this case involves a title dispute. Although plaintiffs' reply denied the Village's allegation, contained in its counterclaim, that the Village owned and possessed the various streets and City Spring Park as shown by Exhibit C, plaintiffs were estopped to make that denial.

The Village concedes that plaintiffs own Block 15 as shown on Exhibit C. Plaintiffs' deed makes reference to Exhibit C. Under Exhibit C, Block 15 consists of eight lots having a total area of 69,696 square feet. The area of the Ollison property substantially exceeds 69,696 square feet. Thus, the judgment is wrong, as against the Village.

■ Since plaintiffs took record title by a deed referring to Exhibit C, plaintiffs cannot dispute the dimensions of their land as shown on Exhibit C or question the location of their land with regard to the parks, street and

public alleys shown on Exhibit C. Plaintiffs cannot avoid the foregoing principle by merely ignoring Exhibit C and attempting to describe their land by metes and bounds as shown on Whitworth's survey, plaintiffs' Exhibits 6–A and 6–B.

■ Plaintiffs, at length, contend their claim of adverse possession is based not on their deed (which gives mere color of title) but on the metes-and-bounds description of their survey. In view of § 516.090, quoted in footnote 3, plaintiffs could not properly claim the land dedicated for street, public alleys, and City Spring Park on the basis of adverse possession, assuming the Village can locate its property, in which case the Village succeeds on its second point.

The Village's third point is that the trial court erred in rejecting Exhibits D and E, two surveys made by surveyor Slagle and testimony concerning the same, because the evidence satisfied § 60.150, which reads:

> No survey or resurvey shall be admitted into evidence in any court in this state unless it is made by a registered land surveyor, and it can be shown that the survey is located by measurements to monuments of the section, United States survey, subdivision, or other unit in which the property is legally described. A survey may not be rejected, after August 28, 1991, solely on the grounds that it did not commence at a government corner.[4]

Prior to the amendment of § 60.150 in 1991, a survey not definitely shown to have commenced from a corner established by the government or, if lost, reestablished in accordance with statutes, was of no probative value and was inadmissible. *Cantrell,* 702 S.W.2d at 938[1]. It was also held that where a surveyor relied on prior data that originated from a government corner, reliability of that data had to be shown by pro-

ducing and proving the data in evidence. *Roberts v. Harms,* 627 S.W.2d 924, 926[2,3] (Mo.App.1982); *Barnhart v. Ripka,* 297 S.W.2d 787, 792 (Mo.App.1956) ("Even the testimony of a surveyor as to the location of boundary lines is not to be received unless the data from which such lines are run is produced and proved."). Under those authorities, Exhibit D and E were inadmissible because they were based, at least in part, on a prior survey that was not offered into evidence.

■ Seeking to uphold the trial court's ruling that Exhibits D and E were inadmissible, plaintiffs argue that the exhibits do not meet the requirement of § 60.150 that "it can be shown that the survey is located by measurements to monuments of the section, United States survey, subdivision, or other unit in which the property in legally described."

Section 60.301 reads, in pertinent part:

Whenever the following words and terms are used in this chapter they shall have the following meaning unless the context clearly indicates that a different meaning is intended:

(1) **"Corners of the United States public land survey",** those points that determine the boundaries of the various subdivisions represented on the official plat such as the township corner, the section corner, the quartersection corner, grant corner and meander corner;

(2) **"Existent corner",** a corner whose position can be identified by verifying the evidence of the original monument or its accessories, or by some physical evidence described in the field notes, or located by an acceptable supplemental survey record or some physical evidence thereof, or by testimony. The physical evidence of a corner may have been entirely obliterated but

4. Section 60.150, as amended in 1989, read:
No survey or resurvey, hereafter made by any person, except that of the county surveyor or his deputy, shall be considered legal evidence in any court in this state. Only surveys made by the county surveyor are entitled to become part of the county surveyor's plat book.
Prior to 1989, § 60.150 read:
No survey or resurvey, hereafter made by any person, except that of the county surveyor or

his deputy, shall be considered legal evidence in any court in this state, except such surveys as are made by the authority of the United States or by mutual consent of the parties. The present version of § 60.150, except for cosmetic changes and a now deleted provision that the statute would expire on August 28, 1996, has been in effect since 1991.

the corner will be considered existent if its position can be recovered through the testimony of one or more witnesses who have a dependable knowledge of the original location. A legally reestablished corner shall have the same status a an existing corner;

(3) **"Lost corner"**, a corner whose position cannot be determined, beyond reasonable doubt, either from traces of the ordinal marks or from acceptable evidence or testimony that bears upon the original position;

(4) **"Monument"**, the physical object which marks the corner point determined by the surveying process. The accessories, such as bearing trees, bearing objects, reference monuments, mounds of stone and other similar objects that aid in identifying the corner position, are also considered a part of a corner monument.

Section 60.150 requires a showing "that the survey is located by measurements to monuments of the section, United States survey, subdivision, or other unit in which the property is legally described." As used in the § 60.301(4), "monument" refers to "the physical object which marks the corner point determined by the surveying process." However, the last sentence of § 60.150 provides that a survey may not be rejected solely on the grounds that it did not commence at a government corner. The interplay between the requirement of the first sentence and the abolition of the former rule by the second sentence is not self-evident.

The Department of Natural Resources is authorized by § 60.510(7) to prescribe and disseminate to surveyors "advisory regulations designed to assist in uniform and professional surveying methods and standards in this state." *Thurmond v. Moxley*, 879 S.W.2d 709, 712 (Mo.App.1994). The Department of Natural Resources has published *Missouri standards for property boundary surveys. 10 CSR 30-2.* In 10 CSR 30-2.020(8), the term "physical monument" is defined as follows: "The term physical monument refers to both natural and artificial physical objects which are accepted and used to mark boundaries and corners." That defi-

nition is not confined to a monument marking a corner point.

Prior to the enactment of § 60.150 in its present form, Missouri case law addressed the matter of monuments.

> Monuments, of course, are among the more important indicia of boundaries. They are classified into natural and artificial. Natural monuments are permanent objects found on the land as they are placed by nature. Artificial monuments are landmark or signs erected by the hand of man. 11 C.J.S. Boundaries §§ 6 and 7, pages 546, 547. "[I]t is one of the settled rules of the law of boundaries that calls for courses and distances, quantity, etc., will, in case of a conflict, be controlled by, and yield to, one for a natural object or landmark or permanent artificial monument." 12 Am.Jur.2d Boundaries, § 67, page 604; *Houska v. Frederick*, 447 S.W.2d 514, 518 (Mo.1969). A monument has been defined as being a "fixed, visible object". *Koch v. Gordon*, 231 Mo. 645, 133 S.W. 609, 610 (1910). Considering this definition, an eight inch pipe buried in the ground is certainly a fixed object and is visible if uncovered. The mere fact that it is generally covered would not necessarily destroy its position and significance as a monument since it can always be uncovered and made visible.

*Czarnecki v. Phillips Pipe Line Company*, 524 S.W.2d 153, 157–58[5, 6] (Mo.App.1975). In *City of Warsaw v. Swearngin*, 295 S.W.2d 174, 181[3–4] (Mo.1956), this Court said:

> While it is true that a deed must describe land so that it can be identified, yet that is certain which by evidence aliunde can be made certain. *Houses and fences may be and often are used as monuments of boundaries* and, when so used, their removal or destruction does not affect the land or destroy its identity if the location of such monuments may otherwise be established. (emphasis added; authorities omitted).

*Black's Law Dictionary, Sixth Edition,* defines "monument" as follows:

> In real-property law and surveying, monuments are visible marks or indications left on natural or other objects indicating the

lines and boundaries of a survey. Any physical object on the ground which helps to establish location of boundary line called for; it may be either natural (*e.g.* trees, rivers, and other land features) or artificial (*e.g.* fences, stones, stakes, or the like placed by human hands).

Exhibit C, the plat of the Village of Climax Springs, was admitted without objection. Chapter 445 RSMo deals with plats of cities, towns, or villages, or additions thereto. § 445.010. The plat "shall be drawn to a scale, the scale to be noted on the plat, have written on its face as its title, and show the block, section, United States survey, or part thereof, it purports to represent." *§ 445.020.*

Section 445.060 legalizes a plat "of any town or city, and of any addition thereto or subdivision thereof," made by the county surveyor that was "not properly or fully made ... but which shows or describes the real estate correctly or in such a manner that the lines of same may or can be laid or located from such plat, plan or survey upon the ground," and that has been on record for ten years, and such plat "shall have the same force and effect as though properly and fully made ... and shall be received in evidence in all courts of the state, in any cause, and shall be prima facie evidence of the correctness of same and of the showing thereof."

Plats of cities, towns and villages and their additions "made, acknowledged, certified and recorded, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, expressed or intended, and for no other purpose." § 445.070.2. "If such city, town or village shall not be incorporated, then the fee of such lands conveyed as aforesaid shall be vested in the proper county like a trust. . . ." § 445.070.3.

In *Wright v. City of Joplin,* 275 Mo. 212, 204 S.W. 910, 913 (1918), this Court said: "[T]he platting of ground under [now § 445.070] had the same legal effect to dedicate the streets and alleys therein described to the public as effectually as if they had been conveyed by deed directly to the city, and that, when the owners of the lots and blocks fronting upon such streets and alleys as shown by the plat sell any or all of them to third parties, the titles of the streets and alleys so dedicated cannot be questioned by the city, nor by other purchasers of other of such lots, nor can the rights of the purchasers of such lots to access to such streets and alleys *as actually located* be questioned by other purchasers of other lots embraced within the plat from the dedicators." (emphasis added).

In *Wright,* there was a defective plat of an addition to what is now the City of Joplin. The issue, as stated by this Court, 204 S.W. at 913, was:

Which shall prevail, the plat of First addition to Joplin City, as actually laid out, located, and staked out upon the surface of the ground by the original owners of the land and makers of the plat, or the plat that erroneously attempted to follow the calls for monuments, courses, and distances?

This Court held that the plaintiffs were entitled to the relief on their petition, which asked that the plat as actually laid out, located, and staked out on the surface of the ground be adjudicated the true plat of the addition, although the plat as actually located did not conform to the monuments, courses and distances as shown on the record plat. *Wright,* 204 S.W. at 914.

This significant issue on this appeal is the admissibility of Exhibits D and E. For appellate review of cases tried without a jury, this Court "shall consider admissible evidence which was rejected by the trial court and preserved." Rule 73.01(c)(3).

Although Slagle referred to various objects, which he used in making his survey, as "monuments," the issue is whether they were such within the meaning of the first sentence of § 60.150. Surveyor Whitworth also referred to the Southwestern Bell disks as "monuments." If Slagle's survey was admissible, it would support a judgment in favor of the Village. This Court holds that Exhibits D and E meet the requirements of § 60.150.

The judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

BENTON, PRICE, LIMBAUGH, COVINGTON and WHITE, JJ., HOFF, Special Judge, and KENNEDY, Senior Judge, concur.

HOLSTEIN, C.J., and ROBERTSON, J., not sitting.